UNITED STATES of America,
Plaintiff-Appellee,

v.

Albert DUPUY, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Christie BUZARD, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Juan Antonio TERCERO,
Defendant-Appellant.

C.A. Nos. 83–1213, 83–1227 and 83–1214.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 2, 1984.

Decided May 22, 1985.

Ferguson, Circuit Judge, filed a con-
curring opinion.

Daphne Budge, Asst. U.S. Atty., Phoenix, Ariz., for plaintiff-appellee.

William G. Walker, Stomploy & Even, P.C., Tucson, Ariz., Stephen A. Gerst, Michael J. Cohen, Cohen, Gerst, Groseclose & Meissner, Phoenix, Ariz., Walter B. Nash, III, Tucson, Ariz., for defendant-appellant.

Before FERGUSON and NELSON, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

Appellants Albert Dupuy, Christie Buzard, and Antonio Tercero were indicted, with 20 others, in a 24-count indictment charging all defendants with conspiracy, and each appellant with substantive offenses, in the importation and distribution of marijuana and cocaine. Dupuy was convicted on six counts, Buzard on five counts, and Tercero on four counts.

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

### I. *Factual Background and Proceedings Below*

The indictment resulted from an agreement between appellants and others to transport approximately 18,000 pounds of high-quality marijuana, valued at 11 million dollars, from Central Mexico to Northern Mexico for distribution in the United States. The facts encompass a three-month period from July 31, 1980 to October 23, 1980. The facts relevant to this appeal will be presented in detail in discussing each contention of the respective parties.

The Government's case rested primarily on the testimony of an informant, Larry Jackson, who had been an active participant in the conspiracy. Jackson testified that he had made a career of marijuana trafficking for nine years, beginning in 1971. He began to cooperate with the Drug Enforcement Administration (DEA) sometime after the conclusion of the conspiracy involved in this appeal.

Count I of the indictment, filed on September 29, 1982, charged appellants and others with conspiracy to possess with intent to distribute marijuana, to distribute marijuana and to use communications facilities to facilitate a drug offense, in violation of 21 U.S.C. § 846.

Dupuy was charged further in Counts III and VII with interstate travel in aid of racketeering enterprises, in violation of 18 U.S.C. § 1952; in Count VI with possession with intent to distribute 100 pounds of marijuana and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; in Count XIV with importation of 200 pounds of marijuana and aiding and abetting, in violation of 21 U.S.C. §§ 960(a)(1) and (b), and 952(a), and 18 U.S.C. § 2; and in Count XV with possession with intent to distribute 200 pounds of marijuana, in violation of 21 U.S.C. § 841(a)(1).

Buzard was charged further in Count XVIII with possession with intent to distribute 100 pounds of marijuana, in violation of 21 U.S.C. § 841(a)(1); and in Counts

XIX and XX with possession with intent to distribute one-half ounce of cocaine, in violation of 21 U.S.C. § 841(a)(1).

Tercero was charged further in Count VIII with interstate travel in aid of racketeering enterprises, in violation of 18 U.S.C. § 1952; in Counts IX, X, and XI with possession with intent to distribute cocaine and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; in Count XIII with possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1); and in Count XIV with importation of 200 pounds of marijuana and aiding and abetting, in violation of 21 U.S.C. §§ 960(a)(1), 952(a), and 18 U.S.C. § 2.

Trial commenced on June 15, 1983. The Government's case in chief took 10 days of testimony. The informant Jackson's direct testimony continued for four days, and his cross-examination for five days.

On July 6, the court entered a judgment of acquittal as to Tercero on Counts X, XI, and XIV. On July 12 the jury returned verdicts of guilty as to all three appellants on the remaining counts.

## II. *Contentions on Appeal*

All of the appellants contend[1] that

(1) the failure of the prosecution to provide properly discernible impeachment material until well after the cross-examination of the Government's key witness mandates a reversal under the Jencks Act;

(2) the district court denied appellants their Sixth Amendment right to compel the testimony of witnesses by refusing to allow them to call the prosecutor at trial to impeach Jackson's testimony regarding critical issues; and

(3) the court's failure to grant a continuance, strike Jackson's testimony, or grant other sanctions for the Government's violation of Rule 12.1, Fed.R.Crim.P. 12.1, denied appellants their Fifth and Sixth Amendment rights.

In addition appellant Tercero contends that

(4) the district court erred in denying Tercero's request to call the attorneys of two co-defendants as witnesses of his lineup identification; and

(5) the evidence on Count IX was insufficient to warrant his conviction.

(6) Finally, all of the appellants contend that the district court erred in allowing the prosecutor to withhold exculpatory information pursuant to her duty under *Brady v. Maryland,* on the ground that she had promised two co-defendants that their conversations with her would be "secret".

## III. *Jencks Material*

■■■ Appellants contend that the Government failed to provide properly discernible impeachment material until well after the cross-examination of informant, Larry Jackson, the Government's key witness. The Jencks Act, 18 U.S.C. § 3500, gives defendants the right to inspect all documents containing statements of a government witness which relate to the subject matter of that witness's testimony. This disclosure is required for impeachment purposes only. *United States v. Polizzi,* 500 F.2d 856, 893 (9th Cir.1974), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975). Failure to comply with the Jencks Act may result in striking the testimony, 18 U.S.C. § 3500(d), *United States v. Birrell,* 421 F.2d 665, 667 (9th Cir.1970), or even reversal of the conviction, 18 U.S.C. § 3500(d), *Sperling v. United States,* 692 F.2d 223, 227 (2d Cir.1982).

The prosecution had overlooked, until after Jackson testified, an edited version of a statement made by Jackson. The defendants had access to the original unedited version of the statement. Upon discovering the edited statement, which had only a few variations from the unedited version, the prosecutor gave copies to defense counsel. The report showed that the edited version had been read by Jackson. The defendants moved to strike Jackson's testimony or to declare a mistrial.

---

**1.** The appeals of Dupuy, Buzard, and Tercero were consolidated for oral argument. Dupuy and Buzard filed a joint brief. Tercero raised additional questions in a separate brief.

■ The court denied both motions, finding that the prosecutor had acted in good faith and that the late disclosure of the edited version did not prejudice the defendants. The court, in making this ruling, found that although the document would impeach Jackson, the defense already had "as extensive impeaching material as this court has ever encountered in over 30 years of experience." Even though the court found that "any further evidence is really superfluous" it allowed the defendants to further cross-examine Jackson. The second cross-examination filled 68 pages of transcript. Buzard and Dupuy contend that the court erred and that a reversal of the convictions is mandated. The district court's finding of no prejudice is reversible only if it is clearly erroneous. *Campbell v. United States*, 373 U.S. 487, 495, 83 S.Ct. 1356, 1361, 10 L.Ed.2d 501 (1963).

■ The appellants are not claiming that there was no disclosure, but rather that the delayed disclosure was prejudicial. In a similar situation, this Circuit has concluded that untimely disclosure does not require striking a witness's testimony or calling a mistrial where the defendant is not prejudiced and the untimely disclosure was not "willful avoidance and egregious dereliction of the prosecutor's statutory obligation." *Polizzi*, 500 F.2d at 893. Furthermore, "[t]he administration of the Jencks Act is entrusted to the 'good sense and experience' of the district judge 'subject to appropriately limited review of appellate courts.'" *United States v. Parker*, 549 F.2d 1217, 1224 (9th Cir.), *cert. denied*, 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977).

■ In this case, during the course of the first cross-examination, which lasted five days, the defendants brought out extensive impeaching evidence, including Jackson's propensity to lie and his mistreatment of his wife. The court found that the inconsistencies between Jackson's original statement and his present testimony would only serve to show that Jackson was indeed prone to lie. In addition, the defendants had access to the unedited version and had used it in the original cross-examination. The court's conclusion that the late disclosure did not prejudice the defendants is not clearly erroneous.

■ The court's finding that the prosecutor had acted in good faith was based upon the prosecutor's prompt disclosure (within a few hours) upon discovery of the document. The late discovery was due to the volume of the documents and the fact that a case agent had been directed to go through the file and make copies of all pertinent documents to give to the defendants. Although he found the unedited version, he failed to discover the edited version. This oversight could not be labeled as a "willful avoidance and egregious dereliction of the prosecutor's statutory obligation." Cf. *Polizzi*, 500 F.2d at 893. Neither a mistrial nor a striking of Jackson's testimony was required.

## IV. *Prosecutor as Witness*

Appellants next contend that the district court violated their Sixth Amendment right to compel the testimony of witnesses by refusing to allow them to call the prosecutor to impeach informant Jackson's trial testimony through confirming statements made in notes of her debriefing of Jackson. In a series of debriefings conducted at least a year prior to trial the prosecutor had made notes of statements made by Jackson. Three DEA agents were intermittently present during the debriefings.

The prosecutor's notes were turned over to defense counsel several weeks in advance of trial and were used extensively in their cross-examination of Jackson. They contend that in his trial testimony Jackson repeatedly contradicted the version of the facts set out in the prosecutor's notes. Defense counsel accordingly sought to call the prosecutor as a witness to impeach Jackson. Counsel made an offer of proof to the court as to the nature of the inconsistencies and their importance in attacking Jackson's credibility.

The prosecutor informed the court that due to the complexity of the facts and her

unfamiliarity with the facts at the time of her interviews of Jackson, she could not remember being told the facts which later constituted discrepancies and also that she found some errors and inaccuracies in the notes. She could not, accordingly, vouch for the reliability of the notes and lay the necessary foundation for the admissibility of the notes as a recorded recollection, pursuant to Fed.R.Evid. 803(5). Moreover, the notes were not a verbatim recital; nor were they adopted by the witness.

The court denied the defense request to call the prosecutor as a witness, finding that there was "no compelling need" to do so, noting that there had been "approximately two weeks of impeachment testimony of Mr. Jackson", and that the impeachment evidence sought to be produced would be "cumulative at best".

 As a general rule federal courts refuse to permit a prosecutor to be called as a witness in a trial in which he is participating unless there is a "compelling need." *United States v. Tamura*, 694 F.2d 591, 601 (9th Cir.1982). We agree with the district court that there was no compelling need in this case. The appellants were allowed to use the prosecutor's notes on cross-examination. Three agents were present during portions of the debriefing; yet the appellants made no effort to call them as witnesses. In addition, as indicated above, there was ample testimony which indicated that Jackson was prone to lie.

### V. *Notice-of-Alibi Rule*

Pursuant to Fed.R.Crim.P. 12.1, the Government requested that Dupuy disclose any alibi defense to an act alleged to in Count I for his activities on August 31, 1980, whereas at trial the informant, Jackson, testified that the acts took place on August 30, 1980.[2] Dupuy contends that the district court's failure to grant a continuance, strike Jackson's testimony, or grant other sanctions denied him his Fifth (due process) and Sixth (notice of charges and to

secure attendance of witnesses) Amendment rights. These rulings of the district court must stand unless the court abused its discretion. *United States v. Basile*, 569 F.2d 1053, 1057–58 (9th Cir.1978) (continuance); *United States v. Moore*, 653 F.2d 384, 389 (9th Cir.1981), *cert. denied*, 454 U.S. 1102, 102 S.Ct. 680, 70 L.Ed.2d 646 (1982) (motion to dismiss).

The defendants knew that Jackson had testified before the grand jury that Dupuy was in New Mexico on August 30 to prepare to haul 100 pounds of marijuana to Arizona the next day. This was the basis of overt act 10 in Count I of the indictment. Jackson testified on the first day of testimony that overt act 10 had occurred on August 30 (not September 1 as alleged in the indictment or August 31 as stated in the notice to Dupuy). Dupuy's counsel was aware of the discrepancy in dates at that time. It was 18 days later, however, before he brought the discrepancy to the attention of the court, when he moved for a continuance for one month to permit him to go to Mexico to locate relatives of Dupuy to support his alibi defense. He did call Dupuy's wife and mother-in-law to testify that Dupuy was at a family party in Nogales which lasted into the evening of August 30, 1980.

 The appellants seem to read the Rule 12.1 request as though it were a bill of particulars which limits the charges as to the time, place, and date indicated on the Government's request for notice-of-alibi. This reading is inconsistent with the requirements of the rule, its legislative history, and case law. Discovery under Rule 12.1 was designed to give the Government notice of the defendant's alibi defense in order to avoid unfair surprise and delays at trial. *United States v. Bouye*, 688 F.2d 471, 475 (7th Cir.1982); 8 Moore's Federal Practice para. 12.01.02 (1982). The legislative history shows that the rule was designed to benefit the Government. H.R. Rep. No. 94–247, 94th Cong., 1st, Sess, 8, U.S.Code Cong. & Admin.News 1975, p. 674. Under Rule 12.1(a) the Government

---

**2.** The indictment alleged September 1, 1980.

inquires whether the defendant has an alibi defense, and if so the specific defense and witnesses he intends to call. The Government's reciprocal obligation under Rule 12.-1(b) is to furnish the names of the witnesses which link the defendant to the scene of the crime. If the Government does not take advantage of Rule 12.1 as to a particular time, date and place it cannot claim unfair surprise when the defense brings forth alibi witnesses at trial. *Bouye,* 688 F.2d at 475.

 *United States v. Vela,* 673 F.2d 86 (5th Cir.1982), is precisely in point. In that case the appellant claimed that the Government was limited to proof of events which took place during the time frame indicated in its 12.1(a) request for notice of alibi. Such a reading, the court held, would require the Government to invoke the rule for an entire transaction or eschew use of the rule entirely. This, it stated, would render the rule unworkable. *Id.* at 88–89. The court found that Rule 12.1 allows the Government to invoke the rule as to discrete temporal aspects of the crime charged. If the defendant becomes confused about the scope of the crime charged, he should seek a bill of particulars. *Id.* at 89. In this case the appellant was not limited by the Rule 12.1 request for notice-of-alibi to alibi witnesses for August 31, 1980. He was free to bring forth any alibi witnesses he deemed appropriate for the other days encompassed by the charges against him. The Government could not, for those days, claim unfair surprise because it had not invoked Rule 12.1 as to those days. If Dupuy was confused by the Rule 12.1 request, he should have sought a bill of particulars. Fed.R.Crim.P. 7(f). We agree with the court in *Vela* that "the notice-of-alibi rule is not intended to serve the office of such a bill." 673 F.2d at 89.

## VI. *Co-Defendants' Attorneys as Witnesses*

Appellant Tercero contends that the district court erred in denying his request to call the attorneys of his co-defendants Du-

puy and Buzard as witnesses of his line-up identification.

Ruth Holmes, the ex-wife of the informant, had occasion to observe a conspirator who had visited the informant at her home in Albuquerque to negotiate the purchase of 100 pounds of marijuana. She identified Tercero in a line-up as the same individual. Tercero contends that the identification was tainted because the Assistant United States Attorney, Garcia, had pointed toward him before Holmes had made her identification. Tercero urged the court to allow him to call as witnesses the counsel for his co-defendants who had been present at the line-up.

Both counsel objected to being called as witnesses. They indicated to the court that they had seen Garcia make a sort of a sweeping motion in the direction of the line-up. Tercero was in the center of the line-up so the gesture was made in his direction. Garcia had no recollection of making such a gesture. The court denied Tercero's request because it found that no one had actually seen a gesture which anyone concluded to be suggestive and that therefore the prejudice to Dupuy and Buzard, should their attorneys be called as witnesses, outweighed the probative value of the attorneys' testimony.

 The district court is given wide discretion pursuant to Fed.R.Evid. 403 to exclude relevant evidence if there is a danger of unfair prejudice. The court must balance the probative value of the evidence with its likely prejudicial effect. *See, e.g., United States v. Martin,* 599 F.2d 880, 889 (9th Cir.1979). The trial court's decision to exclude evidence is reversible only if that court abused its discretion. *See, e.g., United States v. Patterson,* 678 F.2d 774, 778 (9th Cir.), *cert. denied,* 459 U.S. 911, 103 S.Ct. 219, 74 L.Ed.2d 174 (1982).

 In this case the district court based its decision to exclude on a finding that the proffered witnesses had not found the gesture of Garcia to be suggestive. It would follow that their testimony would do little, if anything, to discredit Holmes's identifica-

tion of Tercero. The court also found that the co-defendants would be prejudiced if their counsel were called as witnesses. To call counsel as witnesses would also be unnecessary since there were other witnesses to the line-up. Tercero made no effort to call as witnesses the other six participants in the line-up or the court reporter. The district court did not abuse its discretion.

Nor is there merit in Tercero's contention that having refused his request to call the counsel as witnesses, the court should have severed Tercero's case so that he could have called them in a separate trial. Rule 14, Fed.R.Crim.P., provides that if it appears that a defendant is prejudiced by a joinder of defendants, the court may grant a severance. "The party seeking reversal of a decision denying severance under Rule 14 has the burden of proving 'clear', 'manifest', or 'undue' prejudice from the joint trial.... [T]he prejudice must have been of such magnitude that the defendant was denied a fair trial." *United States v. Escalante,* 637 F.2d 1197, 1201 (9th Cir.1980).

Here the district court found that "no one actually saw a gesture which anyone concluded was a pointing out of Mr. Tercero." The court properly exercised its discretion in denying the severance motion.

### VII. *Sufficiency of the Evidence*

Tercero also contends that there was insufficient evidence for the jury to convict him on Count IX, which charged Tercero and Ronald Preece with possession with intent to distribute approximately nine pounds of cocaine.

When the informant arrived in Phoenix on September 4, 1980, with 100 pounds of marijuana which Tercero had agreed to purchase, he contacted Ronald Preece, the person indicated by Tercero as the contact person. After delivery of the marijuana they went to Preece's home to wait for Tercero. Upon his arrival Preece offered cocaine as partial payment for the marijuana. Tercero participated in the discussion setting the price for the cocaine. Tercero contends that there is insufficient evidence from which the jury could conclude that he

ever had possession of the cocaine or that he aided and abetted Preece in his possession.

■■■■■ Claims of insufficiency of the evidence must be viewed in the light most favorable to the Government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). The proper test is whether *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). "Circumstantial evidence sufficient to support a jury's finding of guilt may be found in the accumulation of several relatively insignificant pieces of evidence, or it may be presented in the form of a single highly significant or incriminating event." *United States v. Morando-Alvarez,* 520 F.2d 882, 884–85 (9th Cir.1975). Also, when "a joint venture is found joint possession may also be found", *id.* at 884, in that a jury may infer that the defendant had both knowledge of and control over the contraband in the possession of a companion. *United States v. Campbell,* 507 F.2d 955, 958 (9th Cir.1974). *See Morando-Alvarez,* 520 F.2d at 884.

■■■■ In this case a rational trier of fact could have concluded that Tercero and Preece were jointly involved in the purchase of the marijuana. This conclusion could flow from the fact that Tercero made the original contact with the informant; Tercero advised the informant that he should contact Preece when he delivered the marijuana; and Tercero participated in the determination of the cocaine price. With a finding of a joint venture the jury could infer that Tercero had joint possession of the cocaine. A rational trier of fact could have found that Tercero had been in possession of the cocaine.

### VIII. *Brady Material*

We come now to the one contention which presents a serious question on this appeal. Approximately five weeks before the trial began the prosecutor entered into

separate plea negotiations with two co-defendants, Patrice Donley and Forrest Collins. Counsel for each was present throughout the negotiations. As a condition of the negotiations the prosecutor agreed that the discussion would be off the record and would not be used for any purpose except possible impeachment of the individual defendant. The prosecutor took notes of the interviews.

■■■■ About a week after the trial began, the prosecutor decided that her notes contained potentially exculpatory material which she should disclose under *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963),[3] but having promised confidentiality for the notes, the prosecutor took her dilemma to the trial judge. She discussed with him the reasons to keep the notes confidential. By submitting the issue to the judge, the prosecutor satisfied her duty to disclose exculpatory material. *See United States v. Agurs,* 427 U.S. 97, 106, 96 S.Ct. 2392, 2398, 49 L.Ed.2d 342 (1976); *United States*

*v. Gardner,* 611 F.2d 770, 775 (9th Cir. 1980). *See also United States v. Goldberg,* 582 F.2d 483, 488 (9th Cir.1978). Consultation with the judge is particularly appropriate when the Government has legitimate reasons for protecting the confidentiality of the material requested, for the trial judge can then weigh the Government's need for confidentiality against the defendant's need to use the material in order to obtain a fair trial. *United States v. Bocra,* 623 F.2d 281, 285 (3d Cir.1980). *See United States v. Nixon,* 418 U.S. 683, 711, 94 S.Ct. 3090, 3109, 41 L.Ed.2d 1039 (1974). The district court recognized the Government's interest in protecting the confidentiality of the plea bargaining negotiations, during which the potentially exculpatory *Brady* statements were made, as a legitimate interest in confidentiality to be balanced against appellants' need for the contents of the prosecutor's notes.[4]

Stating that appellants could "independently proceed to ascertain the *Brady* material",[5] the court disclosed to appellants'

---

3. A defendant is denied due process if the prosecution suppresses *Brady* material, which is evidence both favorable to an accused and material to either guilt or punishment. *Brady v. Maryland,* 373 U.S. at 87, 83 S.Ct. at 1196. Materiality is the touchstone in the determination of whether evidence qualifies as *Brady* material. The standard used to determine materiality varies, depending on whether the defendant specifically requested the material. *See Briggs v. Raines,* 652 F.2d 862, 865, & n. 3 (9th Cir.1981). If specifically requested, the evidence is material if it "would tend to exculpate ... or reduce the penalty." *Brady,* 373 U.S. at 88, 83 S.Ct. at 1197. *See also United States v. Agurs,* 427 U.S. 97, 104, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976) (evidence is material if it "might have affected the outcome of the trial.") Without a specific request the evidence is material if the "omitted evidence creates a reasonable doubt" as to the defendant's guilt which "did not otherwise exist." *Agurs,* 427 U.S. at 112, 96 S.Ct. at 2402; *United States v. Hibler,* 463 F.2d 455, 462 (9th Cir.1972). This determination is made in light of the entire record. *Agurs,* 427 U.S. at 112, 96 S.Ct. at 2401. While the prosecutor's conclusion that her notes contained *Brady* material does not constitute a legal conclusion to the same effect, it satisfies the threshold requirement that appellants raise a colorable claim that the sealed notes contain *Brady* material. *See United States v. Griffin,* 659 F.2d 932, 939 (9th Cir.1981).

4. Another co-conspirator, Albert Marsh, had made statements inconsistent with those of the informant Jackson with respect to Dupuy. Because Marsh had no objection when approached a week after the plea negotiation interview, the prosecutor gave the appellants her notes of the interview.

5. Since suppression by the Government is a necessary element of a *Brady* claim, *Moore v. Illinois,* 408 U.S. 786, 794–95, 92 S.Ct. 2562, 2567–68, 33 L.Ed.2d 706 (1972), if the means of obtaining the exculpatory evidence has been provided to the defense, the *Brady* claim fails. *See United States v. Shelton,* 588 F.2d 1242, 1250 (9th Cir.1978); *United States v. Brown,* 562 F.2d 1144, 1151 (9th Cir.1977). *See also United States v. Von Brandy,* 726 F.2d 548, 551 (9th Cir.1984) (summaries of data satisfied *Brady* obligation); *United States v. Griffin,* 659 F.2d 932, 939 (9th Cir.1981). The Eleventh Circuit has expressed this rule succinctly, in rejecting a *Brady* argument based on failure to disclose the statement of a witness, since the prosecution disclosed the *identity* of the witness; "Where defendants ... had within their knowledge the information by which they could have ascertained the supposed *Brady* material, there is no suppression by the government." *United States v. Griggs,* 713 F.2d 672, 674 (11th Cir.1983). *See United States v. Brown,* 582 F.2d 197, 200 (2d Cir.), *cert. denied,* 439 U.S. 915, 99 S.Ct. 289, 58 L.Ed.2d 262 (1978). As Justice White has said,

counsel the identity of the two co-defendants whose interviews were memorialized in the notes.[6] The court ordered the notes placed under seal. The court did not, however, itself review the notes *in camera* to determine whether they contained exculpatory material, and if so to decide which portions of the material should be disclosed to the defendants. *Cf. United States v. Jones,* 612 F.2d 453, 456 (9th Cir.1979) (*"In camera* inspection and excision is a sound approach to a *Brady* inquiry."), *cert. denied,* 445 U.S. 966, 100 S.Ct. 1656, 64 L.Ed.2d 242 (1980). Appellants contend that the court erred in disclosing only the identity of the individuals who had made potentially exculpatory statements, and in sealing the notes themselves.

If the appellants were seeking to obtain statements made by Donley and Collins, the procedures followed by the district judge could have satisfied the *Brady* requirement. See cases cited under note 5 and particularly *United States v. Brown,* where the court held that where a witness is involved "[t]he government is not required to make a witness' statement known to a defendant who is on notice of the essential facts which would enable him to

call the witness and thus take advantage of any exculpatory testimony that he might furnish." 582 F.2d 197, 200 (2d Cir.) *cert. denied,* 439 U.S. 915, 99 S.Ct. 289, 58 L.Ed.2d 262 (1978).

 Counsel have cited no case, nor have we found any, involving the precise factual situation here presented. *Cf. United States v. Cadet,* 727 F.2d 1453, 1457 (9th Cir.1984) (abuse of discretion in failing to inspect personnel files before ordering disclosure); *United States v. Chacon,* 564 F.2d 1373 (9th Cir.1977) (abuse of discretion in failing to inspect juvenile records before ordering them sealed). We recognize, however, that appellants here seek notes prepared by the prosecutor of her interviews with the co-defendants rather than statements of the defendants themselves, and that the prosecutor considered her notes *Brady* material. We conclude that to avoid any possible prejudice to appellants, the trial court should have made an *in camera* examination of the prosecutor's notes before ordering them sealed.[7]

In *United States v. Chacon,* "in the interest of judicial economy," this court examined *in camera* personnel files to deter-

---

"any allegation of suppression boils down to an assessment of what the State knows at trial in comparison to the knowledge held by the defense." *Giles v. Maryland,* 386 U.S. 66, 96, 87 S.Ct. 793, 808, 17 L.Ed.2d 737 (1967) (White, J., concurring). *See United States v. Cravero,* 545 F.2d 406, 420 (5th Cir.1976); *United States v. Grandmont,* 680 F.2d 867, 873 (1st Cir.1982).

**6.** Counsel for Donley indicated that if approached, Donley would claim the Fifth Amendment privilege. Counsel for Collins was not present. When asked by counsel for Dupuy for a stipulation as to Collins' intentions with relation to the Fifth Amendment, the court stated, "You may on your own ascertain whether or not his client will speak to you or not."

The court went on to say, "You may, if you wish, subpoena the co-defendants, Donley and Collins.... If they claim the Fifth Amendment, the court would rule upon that at the appropriate time." Upon request by counsel for Buzard for immunity for the co-defendants if they would agree to testify, the court said, "The government may decide whether or not they [sic] want to offer a defendant immunity. The court will face that issue if the government makes the request to the court."

Appellants did not subpoena either Donley or Collins and apparently made no effort to ascertain from either of them the information given in the interview.

**7.** Appellants also argue that the prosecutor violated *Brady* because she should have revealed the contents of the plea negotiations immediately after the interviews. The disclosure of the existence of the remarks, one week after the trial had commenced, appellants argue, would not have allowed them time to take advantage of the exculpatory material, even if they had been able to ascertain its exact nature. This focus on the impact in preparing for trial was rejected by the Supreme Court in *United States v. Agurs,* 427 U.S. at 112 n. 20, 96 S.Ct. at 2401 n. 20. The Supreme Court also recognized the propriety of prosecutor decisions, as to what should be voluntarily revealed to defense counsel, made during the course of trial. *Id.* at 107, 96 S.Ct. at 2399. As the Government points out, this trial lasted for four weeks with frequent recesses, and appellants had ample opportunity to take advantage of the information provided concerning the identity of sources of possible exculpatory testimony.

mine whether a disclosure of the files could have affected the outcome of the trial. 564 F.2d at 1376. While the same procedure might be followed here, we conclude that under the circumstances set forth above, the district court is in a better position than this court to make this determination. Accordingly, we remand to the district court for an *in camera* inspection of the prosecutor's notes to determine whether disclosure of the notes might have affected the outcome of the trial. *Agurs,* 427 U.S. at 104, 96 S.Ct. at 2397 (specific request for information).

### IX. *Conclusion*

We affirm the holdings of the district court on all issues raised in this appeal, except the court's failure to examine *in camera* the prosecutor's notes. We remand to the district court for an *in camera* inspection of the prosecutor's notes to determine whether the failure to disclose the notes would have affected the outcome of the trial. If, upon *in camera* inspection of the notes, the district court concludes that this determination cannot be made from the notes alone, the court may submit copies of the notes to the respective parties for argument to the court.

REMANDED.

FERGUSON, Circuit Judge, concurring:

I concur in the opinion of the majority and I write only to clarify the limited nature of the opinion's holding regarding the defendants' *Brady* claim. Unfortunately, much of the language contained in the discussion of the *Brady* issue not only outstrips the facts and disposition of this claim, it also conflicts with the disposition of this case. With the limited holding of the court properly defined, I concur in the disposition of the *Brady* claim.

The prosecutor engaged in pretrial discussions with the codefendants of the appellants and promised to conceal the occurrence and contents of the meeting. The prosecutor took some notes of her conversations with these codefendants, however, and one week into the trial she turned the notes over to the district court. As the district court observed, and the majority opinion recognizes, the "prosecutor considered her notes *Brady* material." Majority Opinion, *supra,* at 1502. Instead of disclosing the material to the defense, however, the prosecutor submitted her notes to the district court. The court sealed the notes and failed to review their contents. The court chose instead to refer the defendants to alternate means of learning the contents of the conversations memorialized in the prosecutor's notes. The district court considered the prosecutor's identification of the participants to the meeting to be an adequate substitute for disclosure of the *Brady* material.

We reject this procedure as error and remand the *Brady* claim to the district court for the assessment it should have made when it first received the notes from the prosecutor. There is only one difference between the inquiry the district court should have made initially and the inquiry it must now conduct on remand. On remand the district court must further ascertain whether any disclosure the prosecutor should have made constitutes harmless error under *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

The opinion correctly holds that a district court cannot accept conceded *Brady* material and fail either to disclose it or make a determination whether it should be disclosed. The opinion identifies four other propositions, not necessary to the disposition of this case, that are dicta. I write this separate concurrence to clarify the status of these propositions.

The first item of dicta is contained in the court's statement that the prosecutor "satisfied her duty to disclose exculpatory material" by "submitting the issue to the judge." Majority Opinion at 1501. In cases where the status of certain material as *Brady* material is a close question, we have approved a procedure whereby the prosecutor can submit the material to the court for a final resolution of its status. *United States v. Gardner,* 611 F.2d 770, 774–75 (9th Cir.1980). Once this judicial

task is accepted by the district court, of course, the court must make the appropriate findings. *See United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The constitutional duty to disclose articulated in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), however, never shifts from the prosecution to the court. *See United States v. Cadet,* 727 F.2d 1453, 1467 (9th Cir.1984) (government bears constitutional duty to disclose notwithstanding absence of judicial order). Vindication of the government's disclosure determination by the court simply means that the government was not under any duty to disclose in the first place. Where disclosure is required, however, it remains the duty of the prosecutor to disclose in conformity with her constitutional duty under *Brady. United States v. Cadet,* 727 F.2d at 1467. By accepting the judicial task of reviewing discovery disputes between the litigants, the court does not thereby assume the prosecution's constitutional responsibilities. *Brady* imposed minimal disclosure obligations on the prosecution, not on the judiciary. In this case the prosecutor has admitted that some, if not all, of the disputed material is subject to disclosure under *Brady.* The district court's judicial task is to enforce, not assume, this duty. The district court's retention of submitted *Brady* material does not transform the court into a party such that it assumes the disclosure obligations otherwise borne by the government. However, if the government could meet its *Brady* responsibilities by merely using the court as a repository, district courts would soon inherit a warehouse of filing cabinets.

The second assertion offered by the majority without factual or precedential support is the suggestion that, in reviewing the *Brady* material, "the trial judge can then weigh the Government's need for confidentiality against the defendant's need to use the material in order to obtain a fair trial." Majority Opinion at 1501. I agree that the executive branch is endowed with a general privilege for the confidences essential to its basic functions. *United States v. Nixon,* 418 U.S. 683, 711–13, 94 S.Ct. 3090, 3109–10, 41 L.Ed.2d 1039 (1974). The scope of this qualified privilege, however, is narrow and "must yield to the demonstrated, specific need for evidence in a pending criminal trial." *Id.* at 713, 94 S.Ct. at 3110. We need not address the unlikely prospect of the availability of a privilege in this case because the prosecutor did not assert any privilege. In any event, the *Brady* decision has already identified where the Fifth Amendment has struck the balance between the suppression or disclosure of material exculpatory information requested by the defendant. *Brady* teaches that a trial in which the prosecution withholds material exculpatory information requested by the defendant is not a fair trial. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963) (suppression of requested exculpatory material evidence violates due process). Moreover, compliance with *Brady*'s minimal demands does not turn on the good or bad faith of the individual prosecutor. *Id.* at 87, 83 S.Ct. at 1196; *United States v. Agurs,* 427 U.S. at 110, 96 S.Ct. at 2400. Accordingly, the defendant's constitutional right to the disclosure of exculpatory information cannot be lost through improvident or impermissible representations by a prosecutor to a third party as to the confidentiality of *Brady* material. The prosecutor's good faith belief as to her authority to barter away the defendant's *Brady* claims is simply immaterial.

The third item of dicta expressed by the majority opinion is contained in footnote five. Its presence there is innocuous enough were it not for the fact that it appears to contradict the holding of this case. Quoting an Eleventh Circuit opinion out of context, the footnote appears to adopt the position that mere disclosure of the identity of a witness by the prosecution suffices to meet the demands of *Brady.*[1]

---

**1.** The "succinct" quotation from *United States v. Griggs,* 713 F.2d 672, 674 (11th Cir.1983), recited in footnote five has a critical deletion. *See*

Majority Opinion at 1501 n. 5 ("'Where defendants, *prior to trial,* had within their knowledge the information by which they could have ascer-

Majority Opinion at 1501 n. 5 (quoting *United States v. Griggs*, 713 F.2d 672 (11th Cir.1983)). That is the position taken by the district court in the trial below and that is the ruling we now reverse. The *Brady* material involved in this case—the notes of the prosecutor—was retained by the court and withheld from the defendants. We hold that the disclosure of the identity of those attending the meeting described in the notes instead of disclosing the notes, if disclosure is warranted, violated the commands of *Brady*.

The final item of dicta offered by the majority opinion is the suggestion that "the procedures followed by the district court could have satisfied the *Brady* requirement" if the defendants had been seeking to obtain statements made by their codefendants. Majority Opinion at 1502. As the majority opinion observes, we are not faced with a request for statements made by the codefendants. Instead, the only *Brady* question at issue is the procedure followed by the district court regarding the prosecutor's notes. We have found this procedure to be error. We, like the district court, have no basis on which to speculate as to the prosecutor's obligation to disclose material exculpatory statements, written or oral, by the codefendants.

In conclusion, I concur in the majority opinion's discussion of the *Brady* question only insofar as it relates to the disposition of the case before us.

---

tained the alleged *Brady* material, there is no suppression by the government.' ") (deleted material in italics). By her own conduct the prosecutor guaranteed that the defendants would know nothing about the occurrence of her meeting with the codefendants, the conversations therein, and her notes of their discussion. The prosecutor suppressed the information until a week after the trial commenced. It is simply disingenuous to suggest that concealment of known *Brady* material until midway through trial does not constitute suppression while at the same time upholding the "propriety of prosecutor decisions" as to the timing of *Brady* disclosure. *See* Majority Opinion at 1502 n. 7.