968 F.2d 1222
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose Manuel VIGOA, Defendant-Appellant.
 No. 91-10126.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 15, 1992.
Decided July 20, 1992.
 
 Before TANG, PREGERSON and BOOCHEVER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Jose Manuel Vigoa appeals his jury convictions for distribution of cocaine, possession of cocaine with intent to distribute, and conspiracy, in violation of 21 U.S.C. §§ 841(a)(1) and 846. He also appeals his jury convictions for unlawful use of a firearm and assault upon a federal officer, in violation of 18 U.S.C. §§ 924(c) and 111. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 DISCUSSION
 I. Sufficiency of the Evidence
 
 3
 Vigoa contends that the evidence was insufficient to support his convictions for conspiracy, possession of cocaine with intent to distribute, and unlawful use of a firearm. Evidence at trial is sufficient to support a conviction if viewing the evidence in the light most favorable to the prosecution, " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Mason, 902 F.2d 1434, 1441 (9th Cir.1990) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 A.
 
 4
 To support a conviction for conspiracy, the Government must prove the following elements beyond a reasonable doubt: 1) an agreement to accomplish an illegal objective, 2) one or more acts done in furtherance of the illegal objective, and 3) the requisite intent to commit the underlying substantive offense(s). United States v. Penagos, 823 F.2d 346, 348 (9th Cir.1987). Once it is proven that a conspiracy existed, evidence of only a slight connection to the conspiracy is sufficient to convict for knowing participation in that conspiracy. United States v. Taylor, 802 F.2d 1108, 1116 (9th Cir.1986), cert. denied, 479 U.S. 1094 (1987).
 
 
 5
 The prosecution's theory was that Vigoa supplied codefendant Jose Diaz with cocaine and that Diaz, in turn, distributed the cocaine to FBI Special Agent Brito on four occasions. The pattern and weight of the evidence supporting this theory is substantial: 1) Vigoa leased the Sahara storage shed containing the cocaine and packaging paraphernalia, and he leased the Allstate shed allegedly used in the earlier transactions, 2) pen registers and pay phone records showed that Diaz immediately called Vigoa's residence after each of Agent Brito's orders for cocaine, 3) two of these calls were made after Diaz told Brito he would call his supplier, 4) FBI agents observed Vigoa (or someone driving his pickup) enter his storage sheds shortly before two of the drug buys, 5) on February 20, 1990, Vigoa was seen carrying a package similar to the one Diaz delivered to Agent Brito that day, 6) on April 3, 1990, after returning from the Sahara shed, Vigoa was with Diaz when Diaz told Brito to pick up the cocaine, 7) on April 4, 1990, Vigoa fled from the FBI agents and attempted to run them over, and 8) Vigoa's phone number was found in Diaz's address book and wallet.
 
 
 6
 Nonetheless, Vigoa argues there was no evidence that he was aware that the cocaine was located in his storage shed. He claims that someone else with access to the sheds, such as his brother Juan Sanchez, was responsible for the drug activities. This theory is belied by the presence of Vigoa's fingerprints on the plate and scale with the cocaine residue. While Vigoa was not present at any of the deals and was not named as a supplier by Diaz, a rational jury could have inferred that Vigoa supplied the cocaine and participated in the conspiracy.
 
 
 7
 Vigoa's reliance on United States v. Lopez, 625 F.2d 889 (9th Cir.1980) is also misplaced. See id. at 896-97, 899 (defendant's presence in stash house and arguably self-incriminating statements deemed insufficient to convict absent evidence of acts to further the conspiracy). In the instant case, significantly weightier evidence, such as Vigoa's fingerprints on the scale, the timing of his visits to the storage units, and his assault on the FBI agents, established his connection to the conspiracy. See, e.g., United States v. Savinovich, 845 F.2d 834, 837 (9th Cir.) (scales could lead jury to infer intent to distribute, as well as to possess, cocaine, because scales are "one of the tools of the drug trade"), cert. denied, 488 U.S. 943 (1988).
 
 B.
 
 8
 To sustain a conviction for possession with intent to distribute, the Government must prove that Vigoa had dominion and control of the cocaine, and knowledge of its existence. United States v. Castillo, 866 F.2d 1071, 1086 (9th Cir.1988). Dominion and control may be demonstrated by physical custody or constructive possession. See United States v. Batimana, 623 F.2d 1366, 1369 (9th Cir.), cert. denied, 449 U.S. 1038 (1980). A person has constructive possession of an object if he has sufficient dominion and control to give him the power of disposal. Id.
 
 
 9
 Ample evidence supports Vigoa's conviction for possession. Vigoa was the lessee of the Sahara storage shed, in which over 200 grams of cocaine and drug paraphernalia were found. Vigoa's fingerprints were on the scale and plate with the cocaine residue. Coupled with the observations and records of Vigoa's visits to the storage units shortly before three of the four transactions, the jury could infer that Vigoa had physical custody of the cocaine and was aware of its existence. His flight from and reaction to the FBI agents conducting the search of the shed further suggests Vigoa had dominion and control over the items in the shed. Cf. Castillo, 866 F.2d at 1088 (defendant's visible agitation at officer's careless handling of objects during a search is further proof of defendant's possessory interests).
 
 
 10
 Vigoa contends that he did not have exclusive control over the storage sheds. Although Vigoa's brother and wife may have had access to one of the storage sheds, the FBI agents only saw Vigoa at the Allstate and Sahara units during their surveillance. Hence, it was reasonable for the jury to conclude that Vigoa exercised a sufficient degree of control over the premises and the cocaine--even assuming the control was shared with others--to support his conviction for possession.
 
 C.
 
 11
 Vigoa also challenges the sufficiency of evidence regarding his conviction for unlawful use of a firearm. A conviction under 18 U.S.C. § 924(c)(1)[1] requires, first, that the firearm was related to or played some role in the underlying crime and, second, that the defendant used or carried the firearm. United States v. Torres-Medina, 935 F.2d 1047, 1048-49 (9th Cir.1991).
 
 
 12
 Vigoa argues that the handgun and rifles in the storage shed had no functional relationship to the cocaine. Rather, he insists, they were merely stored in the same place as the cocaine and drug paraphernalia. Because the guns were not within easy reach, he contends they could not be readily used to protect the contraband.
 
 
 13
 The close proximity of a firearm to drugs may "strongly suggest[ ]" that the weapon was "related" to the underlying drug-related crimes. Id. at 1049. In this case, the plastic bag containing the cocaine was hidden between a folded mattress of a roll-away bed located in the left rear of the shed. The drug paraphernalia (scale, plate, boric acid) were found in a black bag underneath the wooden table in the right rear of the shed. The loaded handgun with boxes of amunition were inside a container which, in turn, was inside a handbag. This handbag was also located in the rear of the shed, in front of the roll-away bed with the cocaine. The two rifles were found around the lower right-hand corner of the wooden table, blocked by storage materials. Five or six feet separated the loaded gun in the left rear of the shed from the wooden table sheltering the drug paraphernalia in the right rear. Because the weapons here were in close proximity to the cocaine and paraphernalia in the rear of Vigoa's shed, a jury could infer that the firearms were related to the underlying crime of possession. See id.
 
 
 14
 Turning to the "use" element of the offense, although literal use of the firearm is not required, the firearm must have facilitated or had a role in the underlying crime, by protecting the defendant or the drugs or by intimidating others, whether or not the gun is actually displayed or discharged. United States v. Stewart, 779 F.2d 538, 540 (9th Cir.1985). In the past, we have affirmed convictions pursuant to § 924(c) primarily on the basis of the proximity of the weapons to the drugs and drug paraphernalia. See, e.g., Torres-Medina, 935 F.2d at 1050; United States v. Torres-Rodriguez, 930 F.2d 1375, 1385 (9th Cir.1991) (loaded gun hidden in mattress located in defendant's residence which also housed heroin, paraphernalia, and cash).
 
 
 15
 Here, the close proximity of the firearms to the drugs and the fact that the weapons found were the type used to protect drug operations raised a reasonable inference that the guns were used to protect the contraband or Vigoa while he picked up the contraband. On the other hand, no evidence indicated that the weapons belonged to Vigoa or that the weapons were present during any of the drug transactions.[2] Cf. Torres-Medina, 935 F.2d at 1050 (evidence showed that the defendant owned the gun).
 
 
 16
 Torres-Medina, however, indicates that these facts could support the jury's inference that the guns were used in the drug transactions. In Torres-Medina, a crawl space beneath the defendant's house revealed cocaine, scales, drug paraphernalia, and a loaded handgun. As a paraplegic confined to a wheelchair, defendant Torres-Medina argued that it was impossible for him to have access to the gun. The court disagreed. Reasoning that 18 U.S.C. § 924(c)(1) does not require a gun to be readily available, the Torres-Medina court held that the "use" element of the crime may be satisfied if the gun's "physical proximity to the defendant at any time during the commission of the crime ... supports the inference that it emboldened him to commit the underlying offense...." Id. at 1050. Applying this definition, the court found that a jury could infer that Torres-Medina's aide for drug deals could retrieve the gun for him if necessary, thereby making the gun "available" to Torres-Medina and emboldening him in the commission of the drug-related crimes. Id. at 1049-50.
 
 
 17
 Like Torres-Medina, the loaded handgun may have been difficult to reach because it was inside a container and a handbag. Nonetheless, after carefully reviewing the exhibits and the record in this case, we are satisfied that the seized handgun and rifles were generally accessible to anyone working with the cocaine and drug paraphernalia in the rear of the shed. The fact that the firearms were in the rear and blocked by storage materials does not undercut their accessibility to a person handling or picking up the cocaine, since the cocaine and drug paraphernalia were also located in the rear of the shed. Viewing the evidence in the light most favorable to the prosecution, a jury could find that the weapons' presence emboldened Vigoa in storing and picking up the cocaine. We therefore conclude that sufficient evidence supported the conviction for unlawful use of a firearm.
 
 II. Proposed Jury Instructions
 
 18
 Vigoa argues that the district court should have supplemented the general possession instruction given to the jury with his requested instruction on joint possession of the storage unit. The general possession instruction given by the court, he claims, did not adequately cover his defense theory for the count of possession with intent to distribute cocaine.
 
 
 19
 A district court's denial of a proposed jury instruction may be reviewed de novo or for an abuse of discretion. United States v. Whitehead, 896 F.2d 432, 434 (9th Cir.), cert. denied, 111 S.Ct. 342 (1990). Even under the more rigorous de novo standard, however, the district court did not err in declining to give the requested instruction.
 
 
 20
 A criminal defendant is entitled to have a jury instruction on any defense which provides a legal defense to the charge against him and which has some evidentiary foundation, even though the evidence may be weak or inconsistent. United States v. Yarbrough, 852 F.2d 1522, 1541 (9th Cir.), cert. denied, 488 U.S. 866 (1988). A defendant, however, is not entitled to any particular form of instruction, so long as the instruction given fairly and adequately covers his theories of defense. United States v. Faust, 850 F.2d 575, 583 (9th Cir.1988). The trial court has broad discretion in tailoring the precise language of jury instructions. Id.
 
 
 21
 The trial court delivered the following general possession instruction to the jury:
 
 
 22
 A person has possession of something if the person knows of its presence and has physical control of it or has the power and intention to control it. More than one person can be in possession of something if each knows of its presence and has the power and intention to control it.
 
 Vigoa, however, requested the following:
 
 23
 A defendant may also share ownership or control of the place where drugs are found. In this event the drugs may be possessed by only one person, or by some of the people who control the place, or by all of them. However, standing alone, the fact that a particular defendant had joint ownership or control over the place where the drugs were found is not sufficient evidence to find that a particular defendant possessed the drugs found there. In order to find that a particular defendant possessed drugs because of his joint ownership or control over the place where they were found, you must find, beyond a reasonable doubt, that the defendant knew about the presence of the drugs and intended to exercise control over them.
 
 
 24
 The district court denied the instruction because it was argumentative and little evidence indicated that anyone other than Vigoa actually entered the sheds.
 
 
 25
 There was weak evidence of joint access to support Vigoa's supplemental instruction. Juan Sanchez was a co-lessee of the Allstate shed, and Vigoa's sister-in-law testified that, on occasion, she had accompanied Sanchez to the storage shed. Vigoa, however, was the sole lessee of the Sahara shed in which the cocaine was discovered. No evidence indicated that Vigoa's wife, who was authorized to enter, had ever done so. Nor had the FBI ever observed anybody other than Vigoa visit the Allstate or Sahara storage sheds during their surveillance.
 
 
 26
 Notwithstanding the weak evidence supporting a joint access instruction, the district court did not err because the delivered instruction sufficiently covered the required elements for possession. Moreover, it also informed the jury that it could convict for possession only if the defendant knew of its presence, thereby covering Vigoa's defense theory that he did not know the cocaine was in the shed and that others with access to the shed possessed and distributed the cocaine. The court was not obligated to instruct the jury on the inferences arising from the law's application to these particular facts, so long as the given instruction sufficiently covered the defense that Vigoa may have lacked knowledge of the cocaine. Cf. Faust, 850 F.2d at 582-83 (no error in denying specific "no intent to defraud" instruction when general embezzlement instruction adequately covered the elements of good faith defense).
 
 III. Scope of Sanchez' Cross-examination
 
 27
 Next, Vigoa claims the district court's refusal to allow Juan Sanchez to testify solely about Sanchez' access to the storage sheds violated Vigoa's Sixth Amendment right to compulsory process. A district court's decision regarding the scope of cross-examination is reviewed for abuse of discretion. United States v. Feldman, 788 F.2d 544, 554 (9th Cir.1986), cert. denied, 479 U.S. 1067 (1987).
 
 
 28
 Fed.R.Evid. 611(b) provides that "[c]ross-examination should be limited to the subject matter of the direct examination" but that "[t]he court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." In this case, the district court refused to limit Sanchez' testimony to the issue of his access to the storage sheds. Instead, it ruled that the Government could cross-examine him regarding his knowledge about the narcotics in the sheds, because such inquiries would be within the scope of the direct examination. As a result, Sanchez refused to testify on Vigoa's behalf. Under these circumstances, the court did not err in ruling that the Government's potential questions were within the scope of direct examination. See United States v. Vasquez, 858 F.2d 1387, 1392 (9th Cir.1988) (upholding the cross-examination of a defendant regarding narcotics in his apartment, on the basis that "[w]hat was in that apartment was a subject 'reasonably related' to [his] direct testimony"), cert. denied, 488 U.S. 1034 and 489 U.S. 1029 (1989).
 
 
 29
 The cases cited by Vigoa are not on point. They generally involve situations where the trial court allowed a witness to assert a blanket assertion of the Fifth Amendment privilege, even as to non-privileged matters, without careful inquiry regarding the scope of the privilege. See, e.g., United States v. Goodwin, 625 F.2d 693, 700-01 (5th Cir.1980); United States v. Melchor Moreno, 536 F.2d 1042, 1049-50, modified, 543 F.2d 1175 (5th Cir.1976). Here, the district court acted within its discretion because the non-privileged matters which Vigoa sought to examine would have led to reasonably related privileged matters on cross. It is well-established that a defendant who testifies waives his Fifth Amendment privilege and may be cross-examined on matters made relevant by his direct testimony. United States v. Black, 767 F.2d 1334, 1341 (9th Cir.), cert. denied, 474 U.S. 1022 (1985). This rule applies with equal force to a nondefendant witness. See United States v. Herrera-Medina, 853 F.2d 564, 567-68 (7th Cir.1988) ("a witness cannot assert the Fifth Amendment privilege with respect to specific questions if they are within the scope of his testimony; he cannot deprive the opposing party of the right of cross-examination"). We therefore conclude that the district court did not abuse its discretion in ruling that Sanchez could not testify without being cross-examined on related topics.[3]
 
 IV. Pen Register Tapes
 
 30
 Finally, Vigoa argues that the district court erred in refusing to suppress or to order production of copies of the pen register tapes documenting Diaz's alleged calls. Although the Government provided the pen registers that were used in its case-in-chief, Vigoa claims that the Government violated Fed.R.Crim.P. 16 and Brady v. Maryland, 373 U.S. 83 (1963) by refusing to allow his counsel to copy the remaining pen register materials.
 
 
 31
 A district court's application of Rule 16 is reviewed for an abuse of discretion. United States v. Givens, 767 F.2d 574, 583 (9th Cir.), cert. denied, 474 U.S. 953 (1985). "Alleged Brady violations are reviewed de novo and require reversal only where there is a reasonable possibility that the evidence withheld could have materially affected the verdict." United States v. Whitworth, 856 F.2d 1268, 1276 (9th Cir.1988), cert. denied, 489 U.S. 1084 (1989).
 
 
 32
 Rule 16(a)(1)(C) requires the government to permit the defendant "to inspect and copy" documents within the government's possession which are "material to the preparation of the defendant's defense" or will be used in the government's evidence in chief at the trial. Under Brady, the Government is obligated to provide to the defendant all requested exculpatory evidence where the evidence is material either to guilt or to punishment. Brady, 373 U.S. at 87. If, however, a means of obtaining the exculpatory evidence has been provided to the defendant, there is no Brady violation. United States v. Dupuy, 760 F.2d 1492, 1501 n. 5 (9th Cir.1985).
 
 
 33
 Two days before trial, the Government allowed defense counsel only to inspect, but not to copy, all the materials. Vigoa's counsel, however, apparently had at least one opportunity in August 1990 to inspect the pen register materials:
 
 
 34
 KELLY [Vigoa counsel]: ... [AUSA] Zlotnick and I met in his office just one week ago Monday. At that time, the pen registers were not available for inspection. They were being retained by Agent Storey.
 
 
 35
 COURT: But did you have a chance to look at them last August, all of them?
 
 
 36
 KELLY: We probably did. I'm not denying that.
 
 
 37
 R.T. I-153. See also Atchmt. 2 to C.R. 47 (August 29, 1990 letter from United States Attorney's Office inviting Vigoa's counsel to inspect the pen registers). In light of the availability of the pen register tapes on at least one occasion prior to the November 24, 1990 refusal to copy, we find no Brady violation. See id.
 
 
 38
 Turning to Rule 16(a)(1)(C), the record indicates that the Government violated the rule. The Government admits that it did not allow Vigoa to photocopy the pen register materials that were not being used in the trial and which Vigoa believed contained potentially exculpatory material.
 
 
 39
 Although the court probably erred in failing to suppress or order production of the pen registers, this error does not require reversal. A nonconstitutional error, such as one arising from a Rule 16 violation is grounds for reversal only "if it is more probable than not that the error materially affected the verdict." United States v. Bailleaux, 685 F.2d 1105, 1115 (9th Cir.1982). Here, the other evidence incriminating Vigoa--such as the surveillance of his visits to the sheds prior to the drug deals, his fingerprints on the plate with cocaine residue, and his attempt to hit the FBI agents with his pickup truck--was substantial. Although it is possible that the additional pen registers, if copied, would have disclosed calls made by Diaz to other suppliers, this possibility does not rise to the level of "more probably than not" affecting the verdict. The court's ruling on the pen registers does not warrant reversal of the convictions under Brady or Rule 16.
 
 
 40
 Accordingly, Vigoa's convictions are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 18 U.S.C. § 924(c)(1) (1988) states that "[w]hoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime ... be sentenced to imprisonment for five years...."
 
 
 [2]
 Vigoa cites United States v. Phelps, 877 F.2d 28, 30 (9th Cir.1989) for support, but Phelps is not factually analogous to the instant case. Phelps involved the "novel use of a firearm" as merely an item of barter in exchange for a controlled substance. Id
 
 
 [3]
 Vigoa also implies that the court's ruling or the Government's refusal to stipulate that Sanchez had access to the shed denied Vigoa due process. See Diggs v. Owens, 833 F.2d 439, 444 (3d Cir.1987), cert. denied, 485 U.S. 979 (1988). We disagree. It is difficult to see how the court's exercise of discretion regarding the scope of cross-examination can be deemed "governmental ... intimidation," id., given the instant facts. Nor can the Government's refusal to stipulate be considered interference or intimidation when the only evidence that Sanchez had ever actually entered the Sahara shed consisted of the testimony of Vigoa's sister-in-law