**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Ricardo "Ricky" VELA,**
**Defendant-Appellant.**

**No. 81–2062.**

United States Court of Appeals,
Fifth Circuit.

April 2, 1982.

---

Oscar J. Pena, Laredo, Tex., for defendant-appellant.

James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, RUBIN and TATE, Circuit Judges.

CLARK, Chief Judge:

Ricardo "Ricky" Vela assigns a plethora of errors in this appeal from conviction of conspiracy to commit a drug-related offense. After considering each of his arguments, we affirm his conviction. Our resolution of two points he raises is of precedential value. These points are set out in this published opinion. Our discussion of the remaining points is of interest only to the parties and has been issued to them in manuscript form.

## I. *Background*

On November 12, 1980, a grand jury sitting in the Southern District of Texas' Laredo Division handed down a five-count indictment charging Ricky Vela with: conspiring to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 846 & 841(a)(1), possession of a small sample of cocaine with intent to distribute it in violation of 21 U.S.C. § 841(a)(1), distribution of that small sample of cocaine in violation of 21 U.S.C. § 841(a)(1), possession of 639.1 grams of cocaine with intent to distribute it in violation of 21 U.S.C. § 841(a)(1), and distribution of 639.1 grams of cocaine in

violation of 21 U.S.C. § 841(a)(1).[1] Vela was tried before a jury which acquitted him of the four counts alleging substantive offenses, but convicted him of the conspiracy count. He was sentenced by the judge to serve a six-year prison term and fined $10,-000.

The government's side of the story, accepted at least in part by the jury, was as follows. Francisco Caballero and Cesar Gutierrez, both of whom appeared as cooperating witnesses for the prosecution, agreed in June 1980 that Caballero would locate a cocaine supplier to meet the needs of a prospective buyer known to Gutierrez. Caballero's supplier was Vela. Gutierrez' buyer was undercover Special Agent Castro of the Drug Enforcement Administration.

Caballero testified that a course of negotiations with Vela over a period of several days culminated in the delivery of a cocaine sample by Vela to him on the afternoon of June 20, 1980, in Laredo, Texas. The sample was promptly taken to Agent Castro and his colleague Agent Gomez by Caballero and Gutierrez. After several unsuccessful attempts, Caballero contacted Vela and announced to Agent Castro that the delivery of the main shipment of cocaine would take place that night. According to Caballero's testimony, he then met with Vela, traveled in Vela's automobile with him to pick up the cocaine, dropped Vela off in Laredo, and returned with the cocaine to meet Gutierrez, Castro, and Gomez. Upon the delivery of the cocaine, Castro and Gomez revealed their previously disguised identities and arrested Caballero and Gutierrez.

The thrust of Vela's defense was that only Caballero, among the prosecution witnesses, testified to direct contacts with him and that his movements during the crucial evening hours of June 20, 1980, were covered by an alibi placing him at the Laredo Civic Center viewing a closed-circuit tele-

[1] 21 U.S.C. § 841(a)(1) provides that "it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 846 provides, in pertinent part, that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both."

cast of the Leonard-Duran prize fight. Vela sought to attack Caballero's credibility by pointing to inconsistencies in his testimony, the fact that Caballero did not implicate Vela initially, and the sentencing deal between Caballero and the government.

On appeal, Vela sets forth numerous arguments for reversal of his conviction. In this published opinion, we discuss only two of those arguments: first, that the prosecution abused the federal notice-of-alibi rule so as to deny him of a fair trial, and second, that the trial court improperly admitted certain telephone records into evidence.

## II. Notice of Alibi

Vela asserts that the prosecution manipulated Rule 12.1 of the Federal Rules of Criminal Procedure.[2] Rule 12.1 permits the prosecution to ascertain in advance of trial whether a defendant will offer an alibi and if so the details and the witnesses he proposes to call to establish it. In return, the prosecution must reveal the names of the witnesses it will call to rebut the alibi. The short explanation of the rule's purpose is that it is intended "to prevent unfair surprise to the prosecution." H.R.Rep.No. 247, 94th Cong., 1st Sess. 8, *reprinted in* 1975 U.S.Code Cong. & Ad.News 674, 681.[3]

The pertinent portion of the prosecution's initial Rule 12.1 filing reads as follows:

The government alleges that the offense with which defendant is charged was *ultimately consummated* on June 20, 1980. The government *further* alleges that from approximately 5:30 P.M. to 8:30 P.M. on said date the defendant traveled to the following locations, to-wit: Roberto's Lounge on Guadalupe Street, his residence, and to an area off Highway IH–35 north of Encinal, Texas. (Emphasis supplied.)

Vela argues that the filing led him to believe that the government only intended to establish criminal acts occurring between 5:30 and 8:30 P.M. on June 20. Thus, Vela argues that evidence of criminal acts occurring during other times should not have been admitted.

Vela's reading of the prosecution's filing is implausible. It did not state that the crime took place between the hours of 5:30 and 8:30 P.M. After stating that the crime was "ultimately consummated" on June 20, it sought particular information about the 5:30 to 8:30 P.M. period.

Vela's attack raises the question of whether Rule 12.1 requires the prosecution either to use the notice-of-alibi procedure for an entire criminal transaction or to eschew use of the rule entirely. To invoke the rule, the prosecution must file a demand which states "the time, date, and place at which the alleged offense was committed." Many crimes, such as the conspiracy charged here, are accomplished over a long period of time. *Cf. United States v. Bickman*, 491 F.Supp. 277, 279 (E.D.Pa.1980) (citing as an example the continuing offense of holding stolen government proper-

2. Rule 12.1 provides, in pertinent part, as follows:

(a) *Notice by Defendant.* Upon written demand of the attorney for the government stating the time, date, and place at which the alleged offense was committed, the defendant shall serve within ten days, or at such different time as the court may direct, upon the attorney for the government a written notice of his intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish such alibi.

(b) *Disclosure of Information and Witness.* Within ten days thereafter, but in no event less than ten days before trial, unless the court otherwise directs, the attorney for the government shall serve upon the defendant or his attorney a written notice stating the names and addresses of the witnesses upon whom the government intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witnesses to be relied on to rebut testimony of any of the defendant's alibi witnesses.

3. The rule, particularly subsection (b), is also intended to be beneficial to the defendant. *See United States v. Myers*, 550 F.2d 1036, 1042–43 (5th Cir. 1977); H.R.Rep.No.247, 94th Cong., 1st Sess. 9, *reprinted in* 1975 U.S.Code Cong. & Ad.News 674, 681; 8 J. Moore, *Moore's Federal Practice* ¶ 12.1.02 (2d ed. 1981).

ty). In such cases, it would render the rule unworkable if the prosecution could not narrow its notice-of-alibi demand to a more limited interval.

Rather than render the rule useless in such situations, we recognize it to be permissible and consistent with the rule's purpose for the prosecution to seek notice-of-alibi with respect to a discrete temporal aspect of the crime charged. The defendant is amply protected if the prosecution makes it clear that it is invoking the rule in that manner. In today's case, the prosecution's demand and the surrounding circumstances known to Vela clearly apprised Vela of the manner in which the rule was being invoked. If Vela had been unsure about the scope of the crime charged he could have sought a bill of particulars. *See* Fed. R.Crim.P. 7(f). Clearly, the notice-of-alibi procedure is not intended to serve the office of such a bill.

■ In his brief, Vela also argues that the "Government ... failed to advise [him] as to what witnesses it would call upon to rebut alibi." Indeed, there is no evidence in the record indicating that the prosecution provided Vela with notice of the witnesses it would call to rebut his alibi. Rule 12.1(b) specifically requires such notice. Nonetheless, Vela's one-line argument presents no reversible error. First, Vela waived any objection to the prosecution's failure to provide him with such notice. Vela did not object when prosecution witnesses were called to testify. Second, the prosecution provided Vela with a list of its witnesses before trial. Vela has not alleged that the rebuttal witnesses' names did not appear on that list. Thus, Vela cannot claim prejudicial surprise from the appearance of those witnesses. *See United States v. Portillo*, 633 F.2d 1313, 1324 (9th Cir. 1980), *cert.*

denied, 450 U.S. 1043, 101 S.Ct. 1763, 1764, 68 L.Ed.2d 241 (1981); *McClendon v. United States*, 587 F.2d 384, 388–89 (8th Cir. 1978), *cert. denied*, 440 U.S. 983, 99 S.Ct. 1793, 60 L.Ed.2d 244 (1979); *United States v. Floyd*, 555 F.2d 45, 48 n.7 (2d Cir.), *cert. denied*, 434 U.S. 851, 98 S.Ct. 163, 54 L.Ed.2d 120 (1977).

In sum, there was no abuse of Rule 12.1 warranting reversal, if indeed there was any abuse of the rule at all.

### III. *Admission of Telephone Records*

Vela argues that the district court erred in admitting copies of the telephone bills of Vela, Caballero, and Gutierrez under the business records exception to the hearsay rule because a proper foundation was not laid to support the reliability of Southwestern Bell Company's computer-billing process. We hold that the foundation was adequate to support admissibility under Rule 803(6).[4]

At trial, an employee of Southwestern Bell described as custodian of the records sponsored copies of the telephone bills. He testified that the copies were made from microfiche records prepared by the comptroller's department of the company, that the records were prepared in the usual course of the company's regularly-conducted business activity, and that it was part of that activity to prepare such records. When questioned by Vela's counsel outside of the jury's presence, the employee explained the process by which automatic call identification equipment registers the dialing of long-distance telephone calls on electronic tapes. The tapes are then transmitted to the comptroller's office where the information is transferred onto billing tapes. Computers are used at two stages:

---

4. Federal Rule of Evidence 803(6) provides:

(6) *Records of regularly conducted activity.* A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the

memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

first, in the recording of the initial dialing, and second, in the computation and preparation of bills in the comptroller's office. The testifying employee vouched only for the general reliability of the process. He was unable to identify the brand, type, and model of each computer, or to vouch for the working condition of the specific equipment during the billing periods covered.

The district court admitted the bills under Rule 803(6) declaring that they "would be even more reliable than ... average business record[s] because they are not even touched by the hand of man." The defense had previously examined the custodian outside of the jury's presence. Before the jury returned, the court advised the defense that it might want to attack the credibility of the bills on cross-examination. However, the defense never cross-examined the telephone company employee in the presence of the jury. Moreover, the defense did not attack the accuracy of the bills during its closing argument. Indeed, the only reference made to the bills during the defense's closing argument is a suggestion that the jury consult the bills for information tending to exonerate Vela.[5]

Vela's central attack on admissibility of the bills under Rule 803(6) is that the prosecution did not lay a satisfactory foundation. Vela does not dispute that insofar as the custodian of the records testified that the records were kept in the regular course of business the dictates of Rule 803(6) were satisfied. What Vela does argue is that by failing to establish that the computers involved in the billing process were in proper working order a satisfactory foundation was not made and Vela was denied confrontation rights.

■ Our review of a trial court's decision to admit business records is a limited one.

We test it only for abuse of discretion. *See Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir. 1980). While the suggestion has been made that there are unique foundation requirements for the admission of computerized business records under Rule 803(6), *see generally United States v. Scholle*, 553 F.2d 1109, 1125 (8th Cir.), *cert. denied*, 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977); *McCormick's Handbook of the Law of Evidence* 733–34 (2d ed. 1972), this court has previously held that "computer data compilations ... should be treated as any other record of regularly conducted activity." *Rosenberg v. Collins*, 624 F.2d at 665. Like the computer records in the *Rosenberg* case, the telephone company's long distance billing records are "sufficiently trustworthy in the eyes of this disinterested company to be relied on by the company in conducting its day to day business affairs." *Id.*

■ The prosecution laid a proper predicate for the admission of the bills. A telephone company employee explained the precise manner in which the billing data are compiled. The failure to certify the brand or proper operating condition of the machinery involved does not betray a circumstance of preparation indicating any lack of trustworthiness. Fed.R.Evid. 803(6). This court has previously stated that computer evidence is not intrinsically unreliable. *United States v. Fendley*, 522 F.2d 181, 187 (5th Cir. 1975); *Olympic Insurance Co. v. H. D. Harrison, Inc.*, 418 F.2d 669, 670 (5th Cir. 1969). Vela's arguments for a level of authentication greater than that regularly practiced by the company in its own business activities go beyond the rule and its reasonable purpose to admit truthful evidence. The court did not abuse its discretion in admitting the bills or deny Vela his confrontation rights. At best, the argu-

---

5. We pretermit the question of whether Vela waived his right to challenge the admission of the telephone bills by relying on them for his own purposes in closing argument. At one point, Vela's attorney referred the jury to Gutierrez' telephone bill, stating "that that guy had been making calls to Brazil, to Chicago the capital of the ganster world; and San Antonio, Nuevo Laredo, Zapata, Hebronville. Many places in Mexico and all over." At another point, the attorney referred the jury to Gutierrez' bill and suggested that a Hebronville number on that bill belonged to Gutierrez' source. Finally, Vela's attorney asked the jury to consult Caballero's telephone bill. Vela's argument on appeal is a classic attempt to eat his cake and have it too.

ments made go to the weight that should be accorded the evidence, not its admissibility. *See United States v. Scholle*, 553 F.2d at 1125.

## IV.  *Conclusion*

The various arguments set forth by Vela, whether considered singly or cumulatively, do not convince us that a reversal is warranted.  His conviction is

AFFIRMED.