UNITED STATES of America,
Plaintiff-Appellee,

v.

Alfredo ORTEGA–CHAVEZ,
Defendant-Appellant.

No. 81–2177
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Aug. 6, 1982.

Elma T. Salinas, Laredo, Tex., for defendant-appellant.

James R. Gough, John M. Potter, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before GEE, RUBIN and GARWOOD, Circuit Judges:

GARWOOD, Circuit Judge:

Appellant Alfredo Ortega-Chavez appeals his conviction of conspiracy to bring or attempt to bring undocumented aliens into the United States, 8 U.S.C. § 1324(a)(1), 18 U.S.C. § 371, and aiding and abetting an attempt to bring undocumented aliens into the United States, 8 U.S.C. § 1324(a)(1), 18 U.S.C. § 2. Finding no merit in any of his claims, we affirm.

Substantial evidence was presented at trial that on November 21, 1980, Ortega-Chavez and Ramon Gonzalez Sanchez left the United States and entered Mexico at Nuevo Laredo. That same day, Sanchez applied for and received a permit to return to the United States with certain described merchandise. From Nuevo Laredo he and Ortega-Chavez proceeded to Sabinas Hidalgo, Mexico. The next day, November 22, these two met with Alejandro Gonzalez Delgado and five undocumented aliens at a restaurant in Sabinas Hidalgo. From the restaurant, all eight took a bus to Nuevo Laredo. The five undocumented aliens then took a taxi from the Nuevo Laredo bus

terminal to a point close to the bridge leading into the United States. Appellant Ortega-Chavez, Sanchez, and Alejandro Gonzalez Delgado arrived at the bridge in a van. Ortega-Chavez instructed the five aliens to get into a hidden compartment in the van and to remain silent. The van was driven by Sanchez. Approximately halfway across the bridge, Ortega-Chavez got out of the van.

A Customs officer at the bridge, while inspecting the van's merchandise for compliance with the entry permit, noticed that the rear wall of the van on the inside appeared to be less deep than would be suggested by looking at the outside of the van. The van was inspected, the hidden compartment discovered, and Sanchez, Alejandro Gonzalez Delgado, and the five undocumented aliens were placed under arrest. Appellant Ortega-Chavez was arrested later. Ortega-Chavez was charged with conspiracy to bring or to attempt to bring undocumented aliens into the United States and five counts of aiding and abetting Sanchez's attempt to bring illegal aliens into the United States. The jury returned a verdict of guilty as to each offense.

 On appeal, Ortega-Chavez raises several claims of prejudicial error not asserted below. It is well-established that the failure to timely and properly raise these contentions before the district court, either through objection, motion for mistrial, or other appropriate manner, precludes us from reviewing them unless they constitute plain error under Fed.R.Cr.P. 52(b).[1] *See United States v. Reed,* 670 F.2d 622, 623 (5th Cir. 1982) (plain error applies to failure to object to evidence introduced at trial); *United States v. Chaney,* 662 F.2d 1148, 1151 (5th Cir. 1981) (plain error applies to failure to object to waiver of counsel hearing conducted in presence of jury venire); *United States v. Sanders,* 639 F.2d 268, 270 (5th Cir. 1981) (plain error applies to failure to object to inculpatory answer elicited during cross-examination); *United States v. Okenfuss,* 632 F.2d 483, 485 (5th Cir. 1980) (plain error applies to failure to object to alleged prosecutorial misconduct at trial). Plain errors are "limited to those harmful ones that were so rank that they should have been apparent to the trial judge without objection, or that strike at the fundamental fairness, honesty, or public reputation of the trial." *United States v. Perez,* 651 F.2d 268, 273 (5th Cir. 1981) (footnote omitted).

Ortega-Chavez claims the district court erroneously permitted the government to call two unannounced rebuttal witnesses, in contravention of Fed.R.Cr.P. 12.1(b).[2]

1. Fed.R.Cr.P. 52(b) provides:
 "(b) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

2. Fed.R.Cr.P. 12.1 provides:
 "(a) Notice by Defendant. Upon written demand of the attorney for the government stating the time, date, and place at which the alleged offense was committed, the defendant shall serve within ten days, or at such different time as the court may direct, upon the attorney for the government a written notice of his intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish such alibi.
 "(b) Disclosure of Information and Witness. Within ten days thereafter, but in no event less than ten days before trial, unless the court otherwise directs, the attorney for the government shall serve upon the defendant or his attorney a written notice stating the names and addresses of the witnesses upon whom the government intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witnesses to be relied on to rebut testimony of any of the defendant's alibi witnesses.
 "(c) Continuing Duty to Disclose. If prior to or during trial, a party learns of an additional witness whose identity, if known, should have been included in the information furnished under subdivision (a) or (b), the party shall promptly notify the other party or his attorney of the existence and identity of such additional witness.
 "(d) Failure to Comply. Upon the failure of either party to comply with the requirements of this rule, the court may exclude the testimony of any undisclosed witness offered by such party as to the defendant's absence from or presence at, the scene of the alleged offense. This rule shall not limit the right of the defendant to testify in his own behalf.

When its witnesses were sworn prior to trial, the government volunteered that one of them might be called "as a rebuttal." At trial, Ortega-Chavez did not testify and presented only one witness, Graciela Castaneda, whose sole testimony was that she and her husband had brunch with the appellant on November 22, 1980, at their home in San Antonio, Texas. Following Mrs. Castaneda's testimony, the trial was recessed for the day. The next morning, at a conference prior to the jury being brought in, government counsel informed the court and the defense that he "just found this out yesterday that I did have some rebuttal witnesses" and that he would call Ramon Gonzalez Sanchez's parents, neither of whom were among those previously sworn, to testify that appellant was in Sabinas Hidalgo on November 21 and 22, and thus rebut the alibi given by Mrs. Castaneda. Defense counsel then observed that at the beginning of trial the government "indicated that there would be just the possibility of maybe one rebuttal witness; which was" an individual *other* than either of Sanchez's parents. However, no objection or motion was then or thereafter made respecting the testimony of these witnesses. The jury was then brought in, and Sanchez's parents testified, his father placing the appellant in Sabinas Hidalgo on November 22, 1980, and his mother recalling having seen the appellant there on the evening of November 21, 1980.

Allowing these witnesses to testify was not plain error. *See United States v. Vela*, 673 F.2d 86, 89 (5th Cir. 1982). Rule 12.1(b) requires the government to provide the defendant written notice of "the witnesses upon whom the government intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witnesses to be relied on to rebut testimony of any of the defendant's alibi witnesses." This requirement, however, is only a reciprocal obligation triggered by the government's written demand, under Rule 12.1(a), of the notice to offer an alibi defense. *United States v. Benton*, 637 F.2d 1052, 1059 (5th Cir. 1981). *See Vela*, 673 F.2d at 88. Since the government made no written demand under Rule 12.1(a), it was under no duty to provide Ortega-Chavez with a list of rebuttal witnesses. *Benton*, 637 F.2d at 1059.

Appellant further argues that these government rebuttal witnesses, who were present in the courtroom during previous testimony, were allowed to testify despite a sequestration order made pursuant to Fed. R.Evid. 615.[3] Plain error is not established. While Rule 615 sequestration is mandatory, this Court has held that a trial court has discretion to allow the testimony of a witness who has violated the Rule and that a party must demonstrate an abuse of discretion and "sufficient prejudice" to warrant reversal on account of such testimony. *United States v. Womack*, 654 F.2d 1034, 1040 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1029, 71 L.Ed.2d 314 (1982);

"(e) Exceptions. For good cause shown, the court may grant an exception to any of the requirements of subdivisions (a) through (d) of this rule.

"(f) Inadmissibility of Withdrawn Alibi. Evidence of an intention to rely upon an alibi defense, later withdrawn, or of statements made in connection with such intention, is not admissible in any civil or criminal proceeding against the person who gave notice of the intention."

3. Fed.R.Evid. 615 provides:
"At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an

officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause."

On cross-examination defense counsel brought out that these witnesses had been in the courtroom and had heard the testimony the previous day. Though neither had talked to the Assistant United States Attorney prosecuting the case until the morning on which they testified, Sanchez's father had previously talked to another Assistant United States Attorney in connection with procuring a lawyer for his son. However, as noted, at no time was any objection or motion made in regard to the testimony of either witness.

*United States v. Warren*, 578 F.2d 1058, 1076 (5th Cir. 1978) (en banc), *modified on other grounds*, 612 F.2d 887 (5th Cir.) (en banc), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980); *United States v. Eastwood*, 489 F.2d 818, 821 (5th Cir. 1973). Ortega-Chavez is unable to demonstrate either an abuse of discretion or sufficient prejudice from the testimony of the two rebuttal witnesses. Their testimony merely confirmed that of four previous witnesses, that Alfredo Ortega-Chavez was in Sabinas Hidalgo on November 22, 1980.[4] Moreover, the government had no way of knowing that these rebuttal witnesses would be necessary until it heard the testimony of Mrs. Castaneda that Ortega-Chavez had been in San Antonio on the day in question.

Ortega-Chavez also objects to the manner in which a juror was questioned by both the trial judge and the government's attorney in regard to her friendship with defense counsel, Ms. Salinas. During the voir dire of the jury panel, the district judge inquired if anyone on the panel was a close personal friend of Ms. Salinas or "anything of that sort." [5] There was no response from any panel member *or from Ms. Salinas.* After the jury had been selected but prior to the commencement of any other proceedings in the case, it was revealed that one of the jurors knew Ms. Salinas. The district judge thereupon questioned the juror, Mrs. Guerrero, out of the presence of the other jury members, as to her ability to be impartial. During this conference, the government's attorney was allowed to ask the juror whether her friendship with another female lawyer in Laredo would unfairly affect her view of the case. Defense counsel made no objections. In fact, defense counsel never in any way even intimated the slightest displeasure with this proceeding or with the juror. The juror stated twice that she could be "fair and impartial."

■ The district judge handled this situation commendably. Appellant's suggestion on appeal that the in camera hearing in some way operated "to magnify the wrong," far from establishing plain error, is unsupported by a single shred of evidence. The decision to hold such a hearing is within the discretion of the trial judge. *United States v. Chiantese*, 582 F.2d 974, 978 (5th Cir. 1978), *cert. denied*, 441 U.S. 922, 99 S.Ct. 2030, 60 L.Ed.2d 395 (1979). This Court has recognized the district court's responsibility under Fed.R.Cr.P. 24(c) to inquire into a juror's ability to remain impartial. *United States v. Spiegel*, 604 F.2d 961, 967 (5th Cir. 1979), *cert. denied*, 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980). The decision to remove a juror for impartiality is within the sound discretion of the trial court. *Id.* Judge Kazen conducted an inquiry that was both brief and sensitive to the concerns of both parties. He then gave counsel for both parties an opportunity to question Mrs. Guerrero. Defense counsel declined this invitation. Mrs. Guerrero indicated that she could be "fair and impartial to both sides." After repeated assurances from Mrs. Guerrero that she could remain nonpartisan, Judge Kazen determined that she was not prejudiced by her relationship with defense counsel. That determination was not an abuse of discretion. *See United States v. Martinez*, 604 F.2d 361, 364 (5th Cir. 1979), *cert. denied*, 444 U.S. 1034, 100 S.Ct. 708, 62 L.Ed.2d 671 (1980).

■ The remainder of Ortega-Chavez's claims are entirely without merit and do not warrant extended discussion. The allegation that the government's attorney made unspecified prejudicial comments in opening and closing arguments is raised for the first time on appeal and is unsupported by the record. Defense counsel's objection to the government's reference to a photo layout which included Ortega-Chavez was cured by the court's prompt instruction and,

---

4. Juan Gonzalez Torres testified that he saw Ortega-Chavez in Sabinas Hidalgo on both November 21, 1980, and November 22, 1980. Josefina Contreras de Gonzalez stated that she saw the appellant in Sabinas Hidalgo on the evening of November 21, 1980.

5. This inquiry was actually made twice, once respecting Ms. Salinas and once respecting her firm and its members, including herself. Similar questions, of course, were asked concerning government counsel. The court also had counsel for both sides rise and identify themselves.

moreover, all of the government's witnesses later identified the defendant by pointing to him in the courtroom. Equally thorough limiting instructions were given when the government adduced evidence of Ortega-Chavez's recent previous ventures into Mexico to smuggle undocumented aliens into the United States, and these instructions were repeated in the court's final charge to the jury.[6]

While Ortega-Chavez claims that the trial court wrongly failed to inquire into his written waiver of a twelve-person jury, the record neither contains nor suggests the existence of any such document (or of any other waiver of a twelve-person jury). Further, the defendant was tried before and convicted by a panel of twelve jurors.

The evidence was, to say the least, amply sufficient to sustain appellant's conviction. While the testimony of the accomplice, Ramon Gonzalez Sanchez, revealed several inconsistencies with his prior deposition statements, such testimony was certainly not incredible as a matter of law.[7] Appellant's challenge goes to credibility and weight, not competency. Issues of credibility, the weight of the evidence, and conflicts in evidence are matters for the jury. *United States v. Parr*, 516 F.2d 458, 464 (5th Cir. 1975). The testimony of the other government witnesses not only corroborated the accomplice's testimony, but also, standing alone, more than sufficed to support the verdict.

Lastly, appellant claims that the trial court "failed to maintain the appearance of impartiality." This contention is wholly frivolous.[8] We have examined the

---

**6.** There was evidence of three such prior trips. Two, as to which defense counsel did lodge an objection, were testified to by Sanchez as having been made by him and Ortega-Chavez earlier in November 1980 using the same van with the hidden compartment and employing the same pinatas as a "cover" as on the November 22, 1980 trip. This evidence was admissible under Fed.R.Evid. 404(b) on several grounds; as evidence of the conspiracy with Sanchez and others, charged in count one, to illegally bring undocumented aliens into the country "on . . . and prior to November 22, 1980"; as evidence of knowledge and intent (especially since appellant was not present when Sanchez and the aliens were discovered entering in the van, and since when the objection was made there was no indication of an alibi defense); and as showing such similarity of conduct "that it marks the offenses as the handiwork of the accused" by demonstrating "a modus operandi." *United States v. Beechum*, 582 F.2d 898, 912 n. 15 (5th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). Certainly there was no abuse of discretion in the admission of this evidence. *United States v. Benton*, 637 F.2d 1052, 1056 (5th Cir. 1981). The remaining prior trip was testified to briefly by the witness Saldana as having been made in July 1980 with appellant. While the proper relevance of this trip is somewhat more attenuated than that of the November trips, it was not objected to by the defense, and, in light of the other evidence and the limiting instructions, clearly does not rise to the level of plain error requiring reversal. Appellant also *apparently* complains of Sanchez's answer, "He brings people over here" to the government's question, "What does he [appellant] do?" No objection or motion in regard to this testimony

was made at trial, but the careful trial judge on his own initiative ordered the answer stricken and twice instructed the jury to disregard it. Clearly, none of these complaints present any error requiring reversal.

**7.** The inconsistencies, moreover, did not in any direct sense relate to the degree or extent of appellant's participation in the alien smuggling operation. Sanchez's deposition testimony, a part of which was introduced in evidence by the defense, plainly and strongly implicated appellant.

**8.** The one specific instance cited is the judge's statement, when the third government witness was called, that, "Incidentally, ladies and gentlemen, in case you're curious, we swore all these witnesses as a group before you came in here. So they've all been sworn to tell the truth under oath." Since the witnesses were all sworn out of the presence of the jury, this remark was entirely proper and helpful. At no time did defense counsel indicate any dissatisfaction in this regard, nor did counsel below ever in any way raise any complaints of lack of evenhandedness or request any "balancing" ruling or instruction respecting any part of the trial.

We also note that the trial judge instructed the jury, both at the beginning of trial and in his final charge, not to "infer or conclude from any ruling that I may make or anything I say that I have any opinion about this case one way or the other" and "[n]ot to assume from anything I may have said to any witness or to any attorney, or any ruling I have made that I have any opinion about the outcome of this case one

entire record and it is plain that the able trial judge conducted all the proceedings not only fairly, conscientiously, and competently but in a manner that was in all respects fully considerate, courteous, evenhanded, and impartial. Counsel is obliged to be fearless and resolute in resisting any judicial partiality, actual or apparent; equally, however, it is counsel's duty to eschew utterly baseless charges of partiality or similar misconduct.

The evidence against appellant is strong. He was fairly tried and convicted. There being no reversible error, the judgment is affirmed.

AFFIRMED.

way or the other. . . . So, except for my legal instructions to you, I tell you that you should disregard anything else that I have said in reaching your verdict."