UNITED STATES

v.

Thomas A. CASEY, 141–58–1970, Mess
Management Specialist First
Class (E–6), U.S. Navy.

NMCM 95 01495.

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 13 Oct. 1994.

Decided 27 Dec. 1996.

LT C.J. Mc Entee, JAGC, USNR, Appellate Defense Counsel.

LT Kevin L. Flynn, JAGC, USNR, Appellate Government Counsel.

Before KEATING and CLARK, Senior Judges, and OLIVER, J.

OLIVER, Judge:

The appellant was assigned as the front desk supervisor and "phone czar" at the Bachelor Enlisted Quarters (BEQ), Naval Air Station, Pensacola, Florida. A military judge, serving as a general court-martial, convicted the appellant, consistent with his pleas, of dereliction of duty, making a false official statement, and communicating a threat, in violation of Articles 92, 107, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 907, and 934 (1994)[hereinafter UCMJ], respectively. The appellant was also convicted, contrary to his pleas, of 10 specifications of larceny in violation of Article 121, UCMJ, 10 U.S.C. § 921. The military judge acquitted the appellant of the remainder of the charged offenses, including three contested specifications of larceny. His sentence included a bad-conduct discharge, a $2000 fine, and reduction to pay grade E–1. The convening authority approved the punitive discharge and the reduction in grade, but disapproved the fine. The appellant has raised seven assignments of error.[1] We will discuss each in order.

## Assignment of Error I

■ The appellant complains that the military judge abused his discretion when he admitted into evidence, over his timely objection, printouts from the computer system in operation at the BEQ. The purpose of this evidence was to corroborate testimony of witnesses that they had made cash payments on specific dates and to establish that the appellant had entered an incorrect credit code to cover up his thefts. The appellant contends that the expert evidence he presented dem-

1. I. THE MILITARY JUDGE ABUSED HIS DISCRETION WHEN HE OVERRULED APPELLANT'S OBJECTION TO COMPUTER RECORDS OF PHONE BILLS OFFERED INTO EVIDENCE AT THE OUTSET OF THE GOVERNMENT'S CASE IN CHIEF BECAUSE THE TESTIMONY OF A COMPUTER EXPERT, AND THE EVIDENCE OFFERED AT TRIAL, CLEARLY ESTABLISHED THAT THE RECORDS WERE UNTRUSTWORTHY, AND THEREFORE, DID NOT FALL WITHIN THE BUSINESS RECORDS EXCEPTION TO THE HEARSAY RULE.
II. THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT APPELLANT'S GUILT TO WRONGFULLY WITHHOLDING PHONE BILL PAYMENTS FROM THE BACHELOR ENLISTED QUARTERS WHERE HE WORKED.
III. THE MILITARY JUDGE DEPRIVED APPELLANT OF HIS CONSTITUTIONAL RIGHT TO CONFRONT HIS ACCUSER WHEN HE PREVENTED DEFENSE COUNSEL FROM ASKING AGAN LISA FOX–BOWMAN, USN, ABOUT AN INSTANCE OF MISCONDUCT WHICH WAS PROBATIVE OF HER CHARACTER FOR TRUTHFULNESS.
IV. THE MILITARY JUDGE DEPRIVED APPELLANT OF HIS SIXTH AMENDMENT RIGHT TO PRESENT A DEFENSE WHEN HE EFFECTIVELY PREVENTED APPELLANT FROM OFFERING EVIDENCE OF SUBSEQUENT REMEDIAL MEASURES THAT WERE INITIATED WITH THE BEQ'S COMPUTER SYSTEM JUST AFTER APPELLANT HAD BEEN CHARGED WITH WRONGFUL WITHHOLDING OF BEQ FUNDS.
V. THE MILITARY JUDGE ABUSED HIS DISCRETION WHEN HE EFFECTIVELY PREVENTED APPELLANT FROM OFFER-

ING EVIDENCE OF SUBSEQUENT REMEDIAL MEASURES THAT WERE INITIATED WITH THE BEQ'S COMPUTER SYSTEM JUST AFTER APPELLANT HAD BEEN CHARGED WITH WRONGFUL WITHHOLDING OF BEQ FUNDS, BECAUSE NEGLIGENCE WAS NOT AN ISSUE IN APPELLANT'S CASE AND THE EVIDENCE WAS OFFERED TO IMPEACH THE GOVERNMENT'S CLAIM THAT THE COMPUTER SYSTEM WAS RELIABLE.
VI. THE STAFF JUDGE ADVOCATE ERRED IN HIS RECOMMENDATION BY FAILING TO ADEQUATELY RESPOND TO THE LEGAL ERRORS RAISED BY TRIAL DEFENSE COUNSEL IN HIS R.C.M. 1105 SUBMISSION, AND THIS OMISSION, WHICH IS MOST AGGRAVATING BECAUSE THE CONVENING AUTHORITY'S ACTION INDICATES THE CONVENING AUTHORITY DID NOT READ THE RECORD OF TRIAL, RESULTED IN A FAILURE TO ASSIST THE CONVENING AUTHORITY IN HIS DECISION TO APPROVE ONLY SUCH FINDINGS OF GUILTY AND SENTENCE THAT HE FINDS CORRECT IN LAW AND FACT.
VII. THE RECORD OF TRIAL CONTAINS A SUBSTANTIAL BASIS IN LAW AND FACT FOR QUESTIONING APPELLANT'S GUILTY PLEA TO THE SPECIFICATION UNDER CHARGE I, WHICH ALLEGED DERELICTION OF DUTY UNDER ARTICLE 92, UCMJ, BECAUSE APPELLANT'S WRONGFUL CREDITING OF A BEQ RESIDENT'S PHONE ACCOUNT WAS AN AFFIRMATIVE ACT WHICH WENT BEYOND THE NONPERFORMANCE OR FAULTY PERFORMANCE OF DUTIES, AS IS REQUIRED BY ARTICLE 92.

onstrated that the BEQ phone billing database was not sufficiently reliable to meet the requirements for admission of this hearsay evidence under Mil. R. Evid. 803(6), Manual for Courts–Martial, United States (1995 ed.).

■ Computer generated records can be entered into evidence as an exception to the general rule against hearsay if "kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the [record,] … unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Mil. R. Evid. 803(6). This is known as the "business-record exception to the hearsay rule." *United States v. Garces,* 32 M.J. 345, 347 n. 2 (C.M.A.1991). The rule is substantially the same as Federal Rule of Evidence 803(6) with two modifications to adapt the rule to military practice. The definition of "business" specifically includes the Armed Forces and the military rule includes a descriptive list of documents.

■ For a document to be admissible under this Rule, the government must establish two foundational facts: (1) that the writing was made or transmitted by a person with knowledge at or near the time of the incident recorded; and (2) that the record is kept in the course of regularly conducted business activity. *United States v. Miller,* 771 F.2d 1219, 1237 (9th Cir.1985)(computer phone records). The government must show by a preponderance of the evidence that the documents were records of regularly conducted activity. *United States v. Tebsherany,* 32 M.J. 351, 355 (C.M.A.1991). To establish the predicate, the proponent must call a witness who is "generally familiar with the record-keeping system." *Garces,* 32 M.J. at 347; *See Miller,* 771 F.2d at 1237. The record will not be admissible, however, if the source of the information or the method or circumstances of its preparation indicate a lack of trustworthiness. *United States v. Ordonez,* 737 F.2d 793, 805 (9th Cir.1984). The Court of Military Appeals has held that non-compliance with strict procedural requirements in preparing business records will not render them untrustworthy. *United States v. Wetherbee,* 10 M.J. 304, 306 (C.M.A.

1981). In *United States v. Young Bros., Inc.,* 728 F.2d 682, 693 (5th Cir.1984), the Fifth Circuit ruled that computer-generated business records can fit under this exception to the hearsay rule.

To authenticate and lay a foundation for the computer records, Prosecution Exhibits 2–37, the government called Mess Management Specialist Chief (MSC) Ernest Paton. MSC Paton, who was the assistant leading chief petty officer at the BEQ, testified in detail concerning the procedures followed to update data in the Billeting Automated Management System (BAMS) and the UNIX computer system in use at the BEQ. Record at 26–36, 69–86. He also testified as to the night-audit process, which served as a double-check within the system. Although MSC Paton admitted that there were some problems with the operation of the computerized reservation and telephone system in its early months of operation, he testified that the BEQ management relied upon it for reservation and billing and found it to be a generally satisfactory system.

The defense then called LT Dean Rich, U.S. Navy, a computer-science expert whom the Navy Criminal Investigative Service (NCIS) had requested to conduct a vulnerability assessment on the computer system in use at the BEQ. He testified that the BEQ management made virtually no provision for computer security. A reasonably knowledgeable "hacker" or "phone freak," equipped with only a home computer and modem, could have gotten into the system and changed any of the information in the data base. On balance, he called the system "not reliable." Record at 63. Other witnesses, usually on cross-examination, testified that the resident's bills were often wrong and the system occasionally "crashed."

■ After hearing all the evidence relevant to the hearsay objection, the military judge found that the records were sufficiently trustworthy to be admissible under Mil. R. Evid. 803(6). Record at 68–69. The military judge has the responsibility to determine whether evidence is admissible. Mil. R. Evid. 104(a). The military judge's determination to admit evidence normally will not be

reversed except for an abuse of discretion. *See United States v. Martindale*, 36 M.J. 870, 877 (N.M.C.M.R.1993)(residual hearsay exception); *United States v. Vela*, 673 F.2d 86, 90 (5th Cir.1982). While the appellant claimed that there was a *"complete* breakdown of the computer system," Appellant's Brief at 9 (emphasis in original), we see the evidence as only creating some questions as to the reliability of the system, which goes to weight rather than admissibility. *See Vela*, 673 F.2d at 90 (computerized telephone records admissible even without showing that computers were in proper working order; problems went to weight rather than admissibility). A computer system does not have to be foolproof, or even the best available, to produce records of adequate reliability to comply with Mil. R. Evid. 803(6). *See United States v. Glasser*, 773 F.2d 1553, 1559 (11th Cir.1985)(noting that otherwise all the opponent need do is demonstrate that there is a more reliable system available).

As the government demonstrated in its brief, the computer records corroborated the testimony of each of the witnesses that they had paid the appellant a certain amount of cash on a specific date. It was the appellant who falsely characterized those payments as credits rather than payments. *See United States v. Hutson*, 821 F.2d 1015, 1019–20 (5th Cir.1987) (rejecting the defendant's arguments that, since the defendant had been able to manipulate the computerized bank records, they were necessarily untrustworthy). The BAMS/UNIX system was a commercially developed computer system which other businesses within and outside of the government relied upon for their billing and reservation processes. Errors in the records attributable to incorrect data entry or defects in the operation of the computer program go to weight, not admissibility. *United States v. Catabran*, 836 F.2d 453, 457–58 (9th Cir. 1988).

After a careful review of the evidence, we conclude that the military judge did not abuse his discretion in admitting these computer records into evidence under Mil. R. Evid. 803(6). This assignment of error is without merit.

### Assignment of Error II

■ The appellant next claims that the government failed to prove beyond a reasonable doubt that he wrongfully withheld phone bill payments. Specifically, the appellant contends that: (1) the computer records were unreliable; (2) several of the witnesses had a motive to claim that they had paid the appellant cash for their phone bills; (3) much of what he did in accepting payment and crediting the resident was clearly not improper; and (4) he had introduced overwhelming evidence of outstanding military character. After a careful review of the record, we find that the evidence is adequate for a finding of guilty to Charge IV, Specifications 2–3 and 6–13 beyond a reasonable doubt.

■ Article 66(c), UCMJ, 10 U.S.C. § 866(c), requires this court to determine not only the legal sufficiency of the evidence, but also its factual sufficiency. The test for legal sufficiency is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987). Applying this test we must "draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. McGinty*, 38 M.J. 131, 132 (C.M.A.1993)(quoting *United States v. Blocker*, 32 M.J. 281, 284 (C.M.A. 1991)). The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we ourselves are convinced of the accused's guilt beyond a reasonable doubt. *Turner*, 25 M.J. at 325.

We have reviewed the record of trial *de novo* and the briefs of the parties. We found particularly helpful the government's brief, which detailed the connection between each specification and the underlying testimony in the record as well as the corresponding prosecution exhibit. Government Reply to Assignment of Errors at 16–21. Unless we are willing to accept the appellant's testimony, including his bald assertion that all nine of

the key witnesses were lying about paying him cash either in his office or in the BEQ parking lot, we find the evidence of guilt to the larceny offenses to be overwhelming. The appellant's second assignment of error is therefore without merit.

### Assignment of Error III

■ The appellant next contends that the military judge deprived him of his constitutional right to confront AGAN Lisa Fox–Bowman about an instance of prior misconduct which was probative of her character for truthfulness. On the facts of the case, we disagree.

In his brief, the appellant claims that his trial defense counsel attempted to cross-examine AGAN Fox–Bowman under Mil. R. Evid. 608(b), "about a specific instance of misconduct that was probative of her character for truthfulness, namely, a nonjudicial punishment (NJP) she was awarded for false swearing." Appellant's Brief at 13. Both the trial defense counsel and the military judge clearly focused on whether or not the NJP was the equivalent of a conviction for the purposes of Mil. R. Evid. 609(a)(2). The military judge's conclusion, that an NJP is not the equivalent of a conviction, is correct. *See* Mil. R. Evid. 609(f).[2]

■ The trial defense counsel preserved the issue only with respect to whether or not the military judge properly determined that "the imposition of nonjudicial punishment was not tantamount to a conviction...." It was on that predicate that the trial defense counsel stated that, "then the defense will not attempt to impeach her with this document [the NJP]." Record at 160. The trial defense counsel would have been able to cross-examine this witness about the underlying misconduct which led to her NJP (a false official statement). He had both a good-faith belief that the misconduct occurred and that it related to an instance of untruthfulness. *United States v. Robertson*, 39 M.J. 211, 214 (C.M.A.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 721, 130 L.Ed.2d 626 (1995). However, unlike in

*United States v. Cantu*, 22 M.J. 819, 823–24 (N.M.C.M.R.1986), the trial defense counsel never made an offer of proof to the military judge concerning a proper subject for cross-examination. His failure to do so waived the issue. Therefore, we conclude that this assignment of error is without merit.

### Assignments of Error IV and V

■ In his next two summary assignments of error, the appellant claims that the military judge erred when he refused to permit him to offer evidence of subsequent remedial measures that the BEQ management initiated to improve the computer procedures shortly after the appellant had been charged with wrongful withholding of BEQ funds. He claims that this deprived him of his Sixth Amendment right to present a defense and was an abuse of the military judge's discretion.

In analyzing these two assignments of error, it is instructive to review that small portion of the transcript which gives rise to both of them. In response to a question on direct examination, Mr. Dahlquist, a civilian who served as a front-desk clerk at the BEQ since February of 1993, stated that "up until recently" (including the period in which these offenses were alleged to have taken place) they had followed a particular protocol to find out how much money the computer had recorded that the clerk should have collected during the day. Record at 242. During the subsequent cross-examination, the following colloquy took place:

Q: And you indicated some about till [sic] recently—has this procedure changed?

A: Yes, it has. Just about ——

TC: Your Honor, at this point I'd object as to what's happened after these things. It's subsequent remedial measures that are not admissible.

MJ: I don't know what's the relevance.

DC: I'm just curious because he said till recently. I wanted to find out what he had to say.

---

2. Of course, the NJP by itself is not the misconduct. And since it is not a conviction, it is not even evidence of misconduct under Mil. R. Evid. 609. It is the underlying misconduct, what the

witness did that resulted in receiving NJP, that is the relevant misconduct for applying Mil. R. Evid. 608(b).

MJ: Maybe you can do that after we recess.

DC: Sure.

Record at 244. Thereafter, the trial defense counsel never made an offer of proof as to what evidence he would have elicited from the witness in response to this question. Far from being a matter critical to a fair trial, as the appellant now contends on appeal, the trial defense counsel seemed to consider this matter as one of idle curiosity; the military judge was obviously unwilling to humor the trial defense counsel's desire to undertake a fishing expedition on the court's time.

The Military Rules of Evidence, like their Federal and most State counterparts, provide that "evidence of the subsequent [remedial] measures is not admissible to prove negligence or culpable conduct in connection with the event." Mil. R. Evid. 407. However, because the trial defense counsel failed to make an appropriate offer of proof under Mil. R. Evid. 103(a)(2) and completely dropped the matter, he failed to preserve the issue for appellate review.[3] We conclude that these two assignments of error are without merit.

### Assignment of Error VI

The appellant next contends that the staff judge advocate failed to respond to his allegations of legal error in his recommendation to the convening authority. With respect to legal errors raised pursuant to Rule for Courts–Martial 1105, Manual for Courts–Martial, United States (1995 ed.)[hereinafter R.C.M.], R.C.M. 1106(d)(4) provides: "The response may consist of a statement of agreement or disagreement with the matter raised by the accused. An analysis or rationale for the staff judge advocate's statement, if any, concerning legal errors is not required." In his addendum of 27 June 1995, the staff judge advocate stated that he disagreed with the appellant's allegation of legal error raised in his clemency petition. Because this is all that is necessary, this assignment of error is without merit.

### Assignment of Error VII

In a final summary assignment of error, the appellant contends that the providence inquiry was inadequate to support the findings of guilty to willful dereliction of duty. He seems to claim that his responses during the providence inquiry demonstrate too much criminal culpability, that an affirmative criminal act goes beyond the nonperformance or faulty performance of duties which Article 92, UCMJ, 10 U.S.C. § 892, envisions. We disagree. The appellant admitted during the providence inquiry that he had a duty "to maintain proper accounting of customer telephone accounts." Record at 12. He then admitted that he willfully failed to perform this duty by not collecting the money Airman Berry owed and crediting the records falsely. Record at 13. His leading chief petty officer had previously told him that this type of behavior constituted unacceptable performance. Record at 14. Unlike the case the appellant cites, *United States v. Sojfer*, 44 M.J. 603, 610 (N.M.Ct. Crim.App.1996), the dereliction to which the appellant pleaded guilty was well within the scope of his duties. Record at 14. Therefore, this assignment of error is without merit.

### Conclusion

After carefully considering the entire record, we are convinced that there was no error prejudicial to the substantial rights of the appellant. Accordingly, we affirm the findings and the sentence, as approved on review below.

Senior Judge KEATING and Senior Judge CLARK concur.

---

**3.** Even had he done so and the military judge had ruled against him, we believe any error would have been harmless. The appellant presented strong evidence from a variety of sources that the computer system was flawed. Any showing that they had made fixes to improve its performance would have added little to this argument.