# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 20, 2013

Lyle W. Cayce
Clerk

No. 12-10795

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

DENNIS WOODS BOWDEN,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:10-CR-152-1

Before JOLLY, DeMOSS, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Dennis Bowden appeals his convictions and sentences on four counts of securities fraud and five counts of mail fraud. Bowden raises two errors at trial and two errors in his sentencing. Because the district court's rulings at trial did not constitute error and because the district court correctly calculated Bowden's sentencing level under the United States Sentencing Guidelines (U.S.S.G.), we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-10795

I.

Bowden owned American Eagle Acceptance Corp. (American Eagle), an automobile dealership specializing in the sale of used cars. Bowden desired to expand his business and endeavored to raise capital through the sale of short-term secured debt obligations (SDOs). Bowden used two companies, collectively known as AmeriFirst, to issue SDOs that promised an average return of seven and a half percent. Bowden enlisted the help of a long-time business associate, Jeffrey Bruteyn, to market the SDOs, which became popular with retirees searching for an equally safe, yet higher yielding alternative to traditionally low-yielding certificates of deposit. Upon purchase, investors received the SDO itself and a Servicing Agreement (SA) that contained several fraudulent representations regarding the security of their investment. Three of the most prominent misrepresentations included statements that each SDO was (1) guaranteed by a commercial bank, (2) secured by certain collateral, and (3) insured against loss. A fourth statement mentioned the existence of a fiduciary relationship between the issuer of the SDOs and the investors. All of these representations were categorically false and they formed the basis of the charges against Bowden.

The financial condition of Bowden's companies began rapidly to deteriorate despite the large influx of capital from the initial issuance of SDOs. Bowden hired Dallas law firm Godwin Gruber and the firm's Securities Section chairman Phil Offill to create an entity to raise capital on behalf of American Eagle in a second wave of sales. Those sales never took place as Bowden's companies were placed into receivership once it became clear that Bowden had defrauded investors.

A grand jury returned an indictment charging Bowden with nine counts of securities fraud and nine counts of mail fraud. Although he had raised approximately fifty-eight million dollars through the SDO offerings, only

2

eighteen million was secured by collateral as promised; the rest of the money was used to purchase apartments, condominiums, airplanes, and sports cars, usually in the name of the corporations.  Other amounts were put in CDs and other low-yield investments.  Despite Bowden's obvious mismanagement of investors' funds, the indictments against him were based solely upon the fraudulent representations in the SAs.

After a trial, the jury returned a guilty verdict on four of the nine counts of securities fraud and five of the nine counts of mail fraud.  Bowden filed a timely notice of appeal.

## II.

Bowden first argues that the district court erred when it refused to give the jury his requested advice-of-counsel instruction.  An appellant's objection to a jury instruction is reviewed under an abuse of discretion standard.  *United States v. Santos*, 589 F.3d 759, 764 (5th Cir. 2009).  A trial court is afforded "substantial latitude in describing the law to the jurors."  *Id.*  That latitude is properly exercised where the district court refuses an advice-of-counsel instruction "[that] incorrectly states the law, is without foundation in the evidence, or is stated elsewhere in the instructions."  *United States v. Tannehill*, 49 F.3d 1049, 1057 (5th Cir. 1995).  A district court's refusal to give a requested jury instruction constitutes reversible error "only if the instruction 1) was a substantially correct statement of law, 2) was not substantially covered in the charge as a whole, and 3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the [party's] ability to present a given [claim]."  *Kanida v. Gulf Coast Med. Pers. L.P.*, 363 F.3d 568, 578 (5th Cir. 2004) (quoting *United States v. McClatchy*, 249 F.3d 348, 356 (5th Cir. 2001)) (internal quotation marks omitted).

Bowden asserts that Phil Offill, the attorney he hired to handle the second round of capital-raising, expressly approved of the way that Bowden was using

investors' money and advised Bowden that he could use the money in any fashion so long as investors could be repaid. Bowden also asserts that, because Offill had copies of all of AmeriFirst's securities related documentation from the first issuance of SDOs, he reasonably assumed that all those documents were within the bounds of the law. Because of Offill's silence and Bruteyn's assurances that everything related to the SAs was legal,[1] Bowden argues that the jury should have received an advice-of-counsel instruction.

The district court properly found that there was "no proof that advice [of counsel] was given at all" with regard to the charges at issue. ROA 1999. While Bowden did testify that Offill gave him some advice, that advice was limited to how Bowden could spend investors' funds. Offill's advice was unrelated to the fraudulent statements that formed the sole basis for Bowden's conviction. Bowden's reliance on Offill's silence likewise failed to give an evidentiary basis upon which an advice-of-counsel instruction could be based. Even if there had been a sufficient evidentiary basis to support such an instruction, the jury's receipt of a good faith instruction "adequately covered" any reliance Bowden would have had on his counsel. *Tannehill*, 49 F.3d at 1058. The district court did not abuse its discretion in refusing Bowden's request.

## III.

Bowden's second issue on appeal involves a government witness at trial. Mary Collins, one of AmeriFirst's accountants, testified about the companies' financial performance. Collins, in the weeks leading up to trial, told the government that Bowden was well aware of AmeriFirst's poor financial condition, but once in court, her testimony conflicted with what she had previously told the government. The government's counsel then impeached Collins with her own previous statements. Following her testimony, a

---

[1] Bowden testified that Bruteyn was Offill's normal point of contact within AmeriFirst. ROA 1793.

government agent confronted Collins outside the courtroom and asked her about the inconsistency in her statements; this encounter was a direct violation of the court's sequestration order regarding witnesses. In response to the violation, Bowden's attorney requested that the judge prohibit rebuttal or exclude impeachment testimony from Collins. The judge denied the request, but allowed Bowden's counsel to speak with Collins privately. After Bowden's counsel spoke with Collins, the judge asked if the counsel requested any further relief and Bowden's counsel stated that he did not.

Bowden argues the district court erred in not excluding Collins's testimony and by not providing "other relief" following the government's violation of the sequestration order. If Bowden's request that the court exclude Collins's impeachment testimony was properly preserved on appeal, Bowden must "demonstrate an abuse of discretion and sufficient prejudice to warrant reversal on account of such testimony." *United States v. Ortega-Chavez*, 682 F.2d 1086, 1089 (5th Cir. 1982). For any objections that Bowden's counsel failed to adequately preserve, this panel reviews the district court's decision for plain error. *Puckett v. United States*, 556 U.S. 129, 135 (2009).

This court need not make a finding whether Bowden properly preserved his objections, because the district court's actions were not error. The district court handled this violation appropriately by speaking directly with Collins and allowing Bowden's counsel the opportunity to talk to Collins privately. Collins was not a crucial government witness. She was one of several witnesses who testified to the poor financial condition of Bowden's companies. The questioning of Collins by the government agent was merely cumulative and took place after Collins had been impeached by her prior inconsistent statements. Bowden has not shown that he was "sufficiently prejudice[d]" nor was the district court's decision to allow Collins's testimony an abuse of discretion. *Ortega-Chavez*, 682 F.2d at 1089.

No. 12-10795

IV.

Bowden next argues that the district court miscalculated the loss attributable to his fraud. Bowden's pre-sentencing report reflected a total offense level of forty-five and a Guidelines range of upward to a life sentence. At his sentencing hearing, Bowden's counsel argued for a reduction in the total offense level based upon the pre-sentencing report's improper calculation of loss attributable to his fraud.

The offense level for crimes involving fraud can be increased based upon either the amount of loss actually inflicted by the defendant or the amount of loss the defendant intended to inflict. *See* U.S.S.G. § 2B1.1(b)(1). "Actual loss" is defined as the reasonably foreseeable pecuniary harm that resulted from the offense, while "intended loss" is defined as "the pecuniary harm that was intended to result from the offense." U.S.S.G. § 2B1.1, cmt. n.3(A)(i)-(ii). At sentencing, the district court found that there was "sufficient evidence at trial, and in the record for sentencing" that Bowden was "chargeable with intending the loss that occurred." ROA 2164. The pre-sentencing report calculated the intended loss from Bowden's fraud as $52,836,947, the total amount of SDOs that Bowden sold through the fraudulent offering. Bowden argues that the district court should have used the actual loss suffered by the investors, an amount totaling $23,245,674.46, rather than intended loss in its calculation.

As an initial matter, Bowden's argument is moot. While Bowden's total offense level was calculated to be forty-five, the level was reduced to forty-three at sentencing. U.S.S.G. § 5(A)(3) ("An offense level of more than 43 is to be treated as an offense level of 43."). If the district court had used the actual loss amount of roughly twenty-three million instead of intended loss, it would have resulted in a decrease in only two levels, still leaving Bowden at a level of forty-three. To the extent that Bowden argues the actual loss should be lower than twenty-three million because of the receiver's allegedly exorbitant fees, that

argument is meritless.  The record reflects that the receivership was handled appropriately.

Calculating the loss resulting from a fraud is a fact-intensive inquiry and the Guidelines instruct a court to defer to a district court's loss calculation. *United States v. Morrison*, 713 F.3d 271, 284 (5th Cir. 2013) (citing U.S.S.G. § 2B1.1 app. n. 3(C) ("The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court's loss determination is entitled to appropriate deference.")).  While this court reviews the district court's method of determining the amount of loss *de novo*, the factual finding of whether or not a defendant "intended" to cause a loss is a factual finding subject to review for clear error.  *United States v. Harris*, 597 F.3d 242, 250-51 (5th Cir. 2010).

Bowden argues that he did not intend a loss of the full amount invested with him because he intended to repay the investors through his legitimate used car business.  Bowden points to several cases to support his argument.  *Harris*, 597 F. 3d at 254 ("[W]here the defendant intends to repay a [fraudulently obtained] loan or replace the property, the intended loss is zero.") (quoting *United States v. Henderson*, 19 F.3d 917, 928 (5th Cir. 1994)) (internal quotation marks omitted); *United States v. Sanders*, 343 F.3d 511, 527 (5th Cir. 2003) ("[I]n the absence of facts indicating an intent not to repay the loan, the actual loss must be used to calculate the defendant's offense level."); *United States v. Middlebrook*, 553 F. 3d 572, 578 (7th Cir. 2009) ("In determining the intended loss amount, the district court must consider the defendant's subjective intent.") (internal citations omitted).  Indeed, this court has held that the Government must "prove by the preponderance of the evidence that the defendant ha[d] the subjective intent to cause the loss that is used to calculate his offense level." *Sanders*, 343 F.3d at 527.  Although a subjective intent to cause the loss is necessary, that subjective intent may be inferred from a defendant's

recklessness. *Harris*, 597 F.3d at 254. A defendant's "actions and conscious indifference [that] put[s] his victims at risk for the entire loss" can be enough for a court to infer a subjective intent to cause the full amount of a loss. *United States v. Wimbish*, 980 F.3d 312, 316 (5th Cir. 1992).

While Bowden's authorities make reference to the requirement that a defendant have the "subjective intent" to cause an intended loss, they "do not prohibit sentencing courts from inferring intent from a defendant's recklessness." *Harris*, 597 F.3d at 254. In Bowden's case, "the district court could [have] reasonably infer[red] intended loss from [Bowden's] reckless acts, regardless of [any] evidence of actual intent." *Id.* at 255. Bowden continued to solicit investors with his fraudulent SDOs while his business lost substantial sums of investor money. Evidence at trial showed that Bowden failed to collateralize a majority of the funds, positioning the investors as general unsecured creditors and exposing them to a complete loss of all money invested with Bowden.

Even though Bowden testified that it was "absolutely not" his intention or desire to cause investors to lose their money, the facts show that AmeriFirst was bleeding money at the time it was placed into receivership. The government's intervention cut short the total loss of investor funds. This court recognizes that district courts cannot "automatically assess [an] intended loss." *Id.* at 260. Instead, there must be a "factual background" that evidences a defendant's intent "to cause a certain amount of loss by recklessly jeopardizing property worth that amount." *Id.* Such a factual background exists in this case. Bowden's willful blindness toward his companies' alarming financial condition constitutes recklessness and supports an inference that he intended to cause a loss of the full fifty-three million invested with him. The district court did not err in selecting intended loss in calculating Bowden's offense level.

No. 12-10795

V.

Bowden's fourth and final argument challenges the district court's imposition of a "leader" enhancement of four levels. *See* U.S.S.G. § 3B1.1(a) ("If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels."). The district court's finding that Bowden was a leader of the criminal scheme is examined for clear error. *United States v. Gonzalez*, 436 F.3d 560, 584 (5th Cir. 2006). The record is rife with evidence of Bowden's power and influence over AmeriFirst. Bowden was president and director of the companies. He received all the companies' documentation, controlled the bank accounts where investors' money was held, put together the fraudulent SDO offering, signed all offerings and paid brokers to sell the SDOs. Bowden's arguments that he should not have been considered a "leader" of the criminal scheme are meritless.

## CONCLUSION

Because the district court did not err with respect to its decisions at trial or with respect to Bowden's offense level under the U.S.S.G., we AFFIRM.